UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| COMERCIALIZADORA RECMAQ LIMITADA, | ) ) ) | Civil No.12cv0945 AJB (MDD) |
| Plaintiff, | ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MOHAMAD REZA GHASEMI'S |
| v. | ) ) | MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED |
| HOLLYWOOD AUTO MALL, LLC, a California limited liability company dba HOLLYWOOD MOTORS; MOHAMAD REZA GHASEMI, an individual; and JAIME SOTOMAYOR, an individual | ) ) ) ) ) ) ) ) | COMPLAINT (Doc. No. 38) |
| Defendants. | ) ) ) | |

Presently before the Court is Defendant Mohamed Ghasemi's ("Ghasemi") motion to dismiss, (Doc. No. 38), Plaintiff Comercializadora Recmaq Limitada's ("Recmaq") first amended complaint ("FAC"), (Doc. No. 35). Recmaq filed an opposition on May 1, 2013. (Doc. No. 41.) As of the date of this order, Ghasemi, who is proceeding pro se, has not filed a reply. Pursuant to Civil Local Rule 7.1.d.1, the Court finds the motion suitable for determination on the papers and without oral argument. Accordingly, the motion hearing set for June 6, 2013, is hereby vacated. For the reasons set forth below, Ghasemi's motion to dismiss the FAC is GRANTED IN PART AND DENIED IN PART. Recmaq is granted limited leave to amend the FAC in compliance with this order. No new claims or parties may be added without leave of court.

# BACKGROUND

## I.   Factual Background

This case involves an alleged oral contract entered into in 2002, by and between Recmaq and Defendants Hollywood Auto Mall, LLC ("Hollywood Auto Mall"), Ghasemi, and Jamie Sotomayor ("Sotomayor") (collectively, "Defendants").[1]  (FAC ¶11.)  Pursuant to the oral contract, Defendants agreed to locate heavy machinery for sale at auctions in the United States, and advise Recmaq of the availability, condition, and specifications of the machinery.  (*Id.* at ¶ 11.)  Upon further instruction by Recmaq, Defendants, through Sotomayor and Ghasemi, would then purchase the machinery for the benefit and on behalf of Recmaq.  (*Id.* at ¶¶ 19, 20.)

The FAC further alleges that pursuant to the oral contract, when Sotomayor and Ghasemi located a piece of machinery for Recmaq, Sotomayor was instructed to contact Recmaq to determine if Recmaq wished to submit a bid for the machinery at the auction. (*Id.* at ¶20.)  In the event Recmaq wished to bid on the machinery, the FAC alleges that Sotomayor represented that Recmaq was required to deposit earnest money with the auctioneers in order to prove that Recmaq was capable of purchasing the machinery.  (*Id.* at ¶ 21.)  If the machinery was successfully purchased, the earnest money was subtracted from the purchase price.  (*Id.*)  Sotomayor would then transmit an invoice to Recmaq for the remaining balance owed to the auctioneer or seller, whereby Recmaq would then transfer the appropriate funds via wire transfer to Sotomayor and Ghasemi, who would then pay the balance due the auctioneer.  (*Id.* at 22.)  If the machinery was not purchased,

---

[1] Recmaq is a company organized under the law of Chile and is in the business of refurbishing and reselling heavy machinery used primarily for construction, agriculture, and mining.  (FAC ¶ 5.)  The FAC makes the following allegations with respect to the Defendants: (1) Hollywood Motors is a California limited liability company and is in the business of buying and selling used automobiles and heavy machinery, (*Id.* at ¶ 6); (2) Sotomayor is an owner, corporate officer, director, and/or registered agent of Hollywood Motors, (*Id.* at ¶ 7); and (3) Ghasemi is an owner, partner, and/or former employee of Hollywood Motors, (*Id.* at ¶ 8).  The FAC also alleges that Sotomayor represented to Recmaq's owner, Drago Gluscevic ("Gluscevic"), that Ghasemi was an integral part of Hollywood Motors' business, and that Sotomayor and Hollywood Motors could not run the business without Ghasemi.  (*Id.* at ¶ 13.)

the earnest money was returned to Sotomayor and Ghasemi and held on account for Recmaq.  (*Id.*)  The FAC also alleges that for each piece of equipment purchased by Recmaq, Sotomayor and Ghasemi received an undisclosed commission.  (*Id*. at 25.)

In or around August 2005, the FAC alleges that Drago Gluscevic ("Gluscevic"), Recmaq's owner, visited both Sotomayor and Ghasemi at a location Ghasemi described as his personal residence.  (*Id.* at 27.)  At these meetings, Recmaq alleges that Gluscevic spoke with both Sotomayor and Ghasemi about bidding on machinery at auctions and future business opportunities between the parties.  (*Id*.)  At one or both of these meetings, the FAC alleges that Ghasemi showed Gluscevic how Ghasemi specifically bid on the machinery at auctions.  (*Id.*)  After the August 2005 meetings, the FAC alleges that Gluscevic spoke directly with Ghasemi over the telephone regarding their business relationship.  (*Id*. at 28.)

The FAC then alleges that there were multiple occasions in which Recmaq transferred money to Sotomayor and Ghasemi for the purchase of machinery, but that Recmaq never received the machinery or a return of the previously transferred funds.  (*Id*. at ¶¶ 29-36.)  For example, the FAC alleges that on or around December 31, 2009, Recmaq transferred $338,400.00 to Sotomayor and Ghasemi for the purchase of eight Caterpillar "backhoe loaders," but that Defendants have neither delivered the machinery or returned the transferred funds.  (*Id*. at ¶ 29.) Thereafter, on or around March 3, 2010, the FAC alleges that Recmaq transferred an additional $139,500.00 to Sotomayor and Ghasemi for the future purchase of three Caterpillar "420 E 2008," but that Defendants have neither delivered the machinery or returned the transferred funds.  (*Id.* at ¶ 30.)  The FAC alleges that before Recmaq transferred the additional $139,500.00 to Sotomayor and Ghasemi in March 2010, Sotomayor informed Recmaq that the eight Caterpillar "back-hoe loaders," which had yet to be delivered to Recmaq, would either be delivered to Recmaq, or the $338,400.00 in transferred funds would be returned to Recmaq no later than June 2010.  (*Id*. at 29.)  Recmaq never received either the machinery or the funds. (*Id*.)

3

In addition to the funds listed above, the FAC alleges that Recmaq transferred $240,000.00 to Sotomayor and Ghasemi to be held on account for deposit as earnest money at four different auctions, and that Recmaq transferred an additional $381,100.00 to Sotomayor and Ghasemi for the purchase of heavy machinery at various dealers.[2]  (*Id.* at ¶¶ 31, 32.)  The FAC also alleges that Sotomayor falsely told Recmaq that $60,000.00 was required in order to qualify as a bidder at these auctions, when in fact, Recmaq later discovered that only $10,000.00 was required.  (*Id.* at ¶ 31.)  To date however, Defendants have not delivered any of the machinery as promised, nor have Defendants returned any portion of the funds transferred to Defendants for the purchase of such machinery.  (*Id.* at ¶¶ 29-32.)  As a result, Recmaq alleges it has transferred $1,099,000.00 to Sotomayor and Ghasemi, but has not received any equipment or a return of such funds.  (*Id.* at ¶ 33.)

On or about January 12, 2011, Frank Keller ("Keller"), an attorney retained by Recmaq, met with Sotomayor at the office of Hollywood Auto Mall, which is located at 1423 Broadway, El Cajon, California 92021.  (*Id.* at ¶ 34.)  The FAC alleges that the purpose of this meeting was to discuss repayment of the debt Sotomayor and Ghasemi owed to Recmaq.  (*Id.*)  At the January 12, 2011 meeting, the FAC alleges that Sotomayor admitted to Keller that he and Ghasemi owed money to Recmaq, and that Ghasemi, his former business partner, had defrauded both him and Recmaq by stealing funds from Hollywood Auto Mall, including the funds Recmaq had transferred to Defendants.  (*Id.*)  On January 17, 2011 Sotomayor provided Keller a written statement, which is attached to the FAC as Exhibit A (Spanish) and Exhibit B (English translation).  (I*d.* at Exs. A, B.)

## II.   Procedural History

On April 17, 2012, Recmaq filed a complaint against Defendants alleging fifteen causes of action, including: (1) fraud; (2) conspiracy to commit fraud; (3) breach of

---

[2] The FAC did not specify the date of these alleged transfers.

contract; (4) RICO violation, 18 U.S.C. 1962(c); (5) RICO conspiracy, 18 U.S.C. 1962(d); (6) conversion; (7) unfair business practices under California's Unfair Competition Law ("UCL"); (8) intentional interference with prospective economic advantage; (9) breach of the implied covenant of good faith and fair dealing; (10) breach of fiduciary duty; (11) unjust enrichment; (12) account stated; (13) debt; (14) money lent; and (15) money paid.  (Doc. No. 1.)  On July 12, 2012, the clerk entered default against Hollywood Auto Mall and Sotomayor.  (Doc. No. 9.)  The Clerk did not enter default against Ghasemi at this time because Recmaq had failed to effectuate service of the summons and complaint on Ghasemi.

After Ghasemi failed to timely respond to the complaint, the Clerk entered default against Ghasemi on November 13, 2012.  (Doc. No. 18.)  On November 14, 2012, Ghasemi filed a motion to dismiss the complaint, which was rejected by the Court as untimely.  (Doc. No. 19.)  On November 26, 2012, Recmaq filed a motion for default judgment against all three Defendants.  (Doc. No. 20.)  On December 14, 2012, Ghasemi filed a motion to set aside the entry of default, (Doc. No. 23), which was granted by the Court on February 6, 2013, (Doc. No. 31).  Ghasemi then filed a motion to dismiss the complaint, (Doc. No. 33), which was vacated as moot after Recmaq filed the FAC, (Doc. No. 37).  On April 10, 2013, Ghasemi filed the instant motion to dismiss.  (Doc. No. 38.)

## **LEGAL STANDARD**

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Black*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The function of this pleading requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.  A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 667, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "All allegations of material fact are taken as true and construed in the light most favorable to plaintiff.  However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555.

## DISCUSSION

The FAC alleges the same fifteen causes of action alleged in the original complaint: (1) fraud; (2) conspiracy to commit fraud; (3) breach of contract; (4) RICO violation, 18 U.S.C. § 1962(c); (5) RICO conspiracy, 18 U.S.C. § 1962(d); (6) conversion; (7) unfair business practices under the UCL; (8) intentional interference with prospective economic advantage; (9) breach of the implied covenant of good faith and fair dealing; (10) breach of fiduciary duty; (11) unjust enrichment; (12) account stated; (13) debt; (14) money lent; and (15) money paid.  (Doc. No. 35.)  The Court addresses each in turn.

## I.   Fraud and Conspiracy to Commit Fraud

Recmaq's first and second causes of action allege fraud and conspiracy to commit fraud.  (FAC ¶¶ 37-55.)  To successfully plead a cause of action for fraud, a plaintiff must show: (1) a false representation; (2) knowledge of its falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damages. *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (quotations omitted).  Pursuant to Federal Rule of Civil Procedure 9(b), "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The intention of Rule 9(b) is to give the defendant

notice of the particular misconduct so that the defendant can defend against it.
*Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citing *Neubronner v. Milken*, 6
F.3d 666, 672 (9th Cir. 1993)).  Therefore, pursuant to Rule 9(b), a plaintiff must plead
the time, place, and nature of the actions, in addition to why the actions are false.  *Decker
v. Glenfed, Inc.* (*In re Glenfed, Inc., Sec. Litig.*), 42 F.3d 1541, 1548 (9th Cir. 1994).

To state a claim for conspiracy to commit fraud a plaintiff must allege sufficient
facts to state a claim for both fraud and civil conspiracy.  *Del E. Webb Corp. v. Structural
Materials Co.*, 123 Cal. App. 3d 593, 603 n.4, 176 Cal. Rptr. 824 (Cal. Ct. App. 1981)
("A conspiracy to commit fraud is not itself a tort and such conduct is not actionable
unless a fraud is in fact committed.").  California law provides that to state a cause of
action for civil conspiracy the plaintiff must allege: (1) formation and operation of the
conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damage
resulting from such wrongful conduct.  *Wasco Prods. v. Southwall Techs*., 435 F.3d 989,
992 (9th Cir. 2006); *Cellular Plus, Inc. v. Super. Ct.*, 14 Cal. App.4th 1224, 1236, 18 Cal.
Rptr. 2d 308 (Cal. Ct. App. 1993).  Moreover, because conspiracy is a legal doctrine used
to establish joint and vicarious liability by the conspirators for an underlying tort, *Entm't
Research Gp. v. Genesis Creative Gp.*, 122 F.3d 1211, 1228 (9th Cir. 1997), each
member of the conspiracy must be able to commit the underlying tort, and all the
elements of that tort must be satisfied, *Applied Equip. Corp. v. Lipton Saudi Arabia Ltd.,*
7 Cal. 4th 503, 511, 28 Cal. Rptr. 2d 475, 869 P.2d 454 (Cal. 1994); *see also Swartz v.
KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (stating that Rule 9(b) applies to claims
alleging conspiracy to commit fraud).

Ghasemi moves to dismiss the first and second causes on the basis that the
allegations are vague, conclusory, and fail to satisfy the particularity requirement of Rule
9(b).  (Doc. No. 38 at 4-5.)  Specifically, Ghasemi contends that although the FAC lists
five statements that were allegedly made by Sotomayor between December 2009 and
December 2010, the FAC does not provide any allegations as to how Ghasemi actively

1   participated in the alleged fraudulent scheme at the time the representations were made,

2   or even that Ghasemi knew these representations had been made, or were going to be

3   made.  Thus, Ghasemi contends Recmaq's arguments that he ratified Sotomayor's

4   statements or conduct after the fact are insufficient to state a claim for fraud or conspiracy

5   to commit fraud.

6        The Court is not inclined to agree.  Although Recmaq alleges that multiple

7   defendants had a part in perpetuating the alleged fraudulent scheme, the Court finds

8   Recmaq has adequately pled Ghasemi's role in the alleged scheme.  *Swartz*, 476 F.3d at

9   765 (stating that when there are multiple defendants, "a plaintiff must, at a minimum,

10  identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme") (internal

11  quotations and citations omitted).  Specifically, Recmaq alleges that Ghasemi was at all

12  relevant times a business partner and/or former employee of Hollywood Auto Mall, and

13  that Ghasemi and Sotomayor were at all relevant times business partners, alter egos,

14  agents, employees, and/or joint venturers.  Recmaq supports this allegation with a letter

15  from Sotomayor (FAC, Exs. A, B), and citation to a lawsuit filed by Ghasemi against

16  Sotomayor in 2010, wherein Ghasemi represented to the Superior Court that Sotomayor

17  was his business partner.[3]

18       Moreover, Recmaq alleges that in or around August 2005, Gluscevic, Recmaq's

19  owner, visited both Sotomayor and Ghasemi at an office located at 1423 Broadway, El

20  Cajon, California.  (FAC ¶ 27.)  On one of these visits, Recmaq alleges that Glusevic

21  spoke in English and Spanish with both Sotomayor and Ghasemi regarding the process

22  for bidding on heavy machinery, and future business opportunities, and that Ghasemi

23  personally showed Glusevic the process for how Ghasemi bid on machinery at auctions.

24  (*Id.*)  Recmaq then alleges that in or around March 2010, Sotomayor solicited an agree-

25  ment from Recmaq for the purpose of providing Defendants additional time to either

26

27       [3] San Diego Superior Court Case No. 37-2010-00071662-CU-HR-EC.  Although
    Recmaq directed the Court to this citation, Recmaq did not provide the Court with the
28  actual case filing.  (FAC ¶ 11, n.1.)

1  deliver the equipment to Recmaq as promised, or return the previously transferred funds.

2  (*Id.* at ¶¶ 29, 30.)  Recmaq alleges that Ghasemi knew of, abetted, and ratified each of

3  Sotomayor's representations.  (*Id.* at  ¶¶ 42, 43, 46.)   Each of these allegations are

4  supported by the letter submitted by Sotomayor and attached to the FAC as Exhibits A

5  and B.

6       Therefore, the Court finds Recmaq has adequately alleged fraud against Defendant

7  Ghasemi.  The FAC alleges that: (1) Ghasemi either made or ratified a false representa-

8  tion; (2) Ghasemi knew the statement was false; (3) Ghasemi made such statement with

9  the intent to defraud Recmaq; (4) Recmaq justifiably relied on such statement(s); and as a

10  result (5) Recmaq sustained damages in the amount of $1,099,000.00.  The Court also

11  finds Recmaq has adequately alleged conspiracy to commit fraud against Defendant

12  Ghasemi.  The FAC alleges: (1) a conspiracy by and between the Defendants; (2) that

13  Defendants, including Ghasemi, made continued misrepresentations in furtherance of the

14  conspiracy; and as a result (3) Recmaq has sustained damages in the amount of

15  $1,099,000.00.  Thus, although further discovery may prove otherwise, at this stage in the

16  proceedings, the Court finds Recmaq has adequately alleged fraud and conspiracy to

17  commit fraud.  Accordingly, Ghasemi's motion to dismiss the first and second causes of

18  action are DENIED.

19  **II.  Breach of Oral Contract**

20       Recmaq's third cause of action alleges breach of an oral contract by and between

21  Defendants and Recmaq.  (FAC ¶¶ 56-62.)  To the extent Plaintiff alleges an oral contract

22  based on Defendants' representations that all funds transferred to Defendants from

23  Recmaq would be used to acquire heavy machinery at auctions, it sufficiently states a

24  claim.  "The standard elements of a claim for breach of contract are: (1) the contract; (2)

25  plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4)

26  damage to plaintiff therefrom."  *Abdelhamid v. Fire Ins. Exch.*, 182 Cal. App. 4th 990,

27  999, 106 Cal. Rptr. 3d 26 (Cal. Ct. App. 2010).

28

Here, Plaintiff alleges that: (1) Sotomayor, on behalf of all Defendants, entered into an oral contract with Recmaq, and that Ghasemi subsequently ratified such contract through his conduct, communications, and course of dealing; (2) Recmaq performed all obligations under the contract by depositing funds with Defendants; (3) Defendants, including Ghasemi, breached the contract by failing to deliver the equipment as requested or return the deposited funds; and (4) Recmaq sustained damages in the amount of $1,099,000.00 as a result of Defendants breach.  Therefore, the Court finds such allegations are sufficient to plead the existence of an oral contract.  Accordingly, Ghasemi's motion to dismiss the third cause of action for breach of oral contract is DENIED.

## III.    RICO and Conspiracy to Commit RICO

Recmaq's fourth and fifth causes of action allege a RICO claim against all Defendants under 18 U.S.C. § 1962(c), and conspiracy to commit RICO under 18 U.S.C. § 1962(d).  The Court first looks to whether there is a valid RICO claim before addressing whether there is a conspiracy to commit RICO.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (stating that the survival of plaintiffs' claim under § 1962(c) will ensure the survival of their claim under § 1962(d)).[4]

To state a claim under § 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P. R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  A plaintiff must also show harm of a specific business or property interest by the racketeering conduct.  *Id.*; *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005).  "Racketeering activity" is any act indictable under the several

---

[4] 18 U.S.C. § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  Pursuant to 18 U.S.C. § 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

provisions of Title 18 of the United States Code, including the predicate acts alleged by Recmaq in this case: mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343).

Ghasemi moves to dismiss the RICO and conspiracy to commit RICO causes of action on the basis that Recmaq has not pled the predicate acts of mail fraud and wire fraud with the required specificity under Rule 9(b), and that the FAC fails to allege a "pattern of racketeering" as required under § 1962(c). Ghasemi further argues that both of these claims should be dismissed without leave to amend because Recmaq is unable to cure any deficiencies in the pleadings. Although the Court finds Recmaq has not adequately pled the predicate acts of mail fraud and wire fraud, the Court finds such deficiencies may be cured by further amendment and therefore grants Recmaq limited leave to amend.

### A.      Mail Fraud and Wire Fraud

To sufficiently plead mail fraud and wire fraud a plaintiff must allege: (1) the formation of a scheme to defraud; (2) the use of the United States mail or wire in furtherance of the scheme to defraud; and (3) the specific intent to deceive or defraud. *See Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc*., 806 F.2d 1393, 1399–1400 (9th Cir. 1986). Because both of these predicate acts involve fraud, Recmaq must plead the facts constituting the fraud with particularity as required by Rule 9(b). *Edwards v. Marin Park. Inc*., 356 F.3d 1058, 1065–66 (9th Cir. 2004) (stating that Rule 9(b) applies equally to civil RICO claims and that the plaintiff must state with particularity the circumstances constituting the fraud). "Allegations of mail fraud under section 1962(a)–1962(c) 'must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme.' " *Schreiber Distrib. Co.*, 806 F.2d at 1401 (quoting *Lewis v. Sporck*, 612 F. Supp. 1316, 1325 (N.D. Cal. 1985)).

Although the FAC references specific dates, wherein Recmaq alleges a specific amount of money was transferred to Defendants by Recmaq for the purpose of purchasing heavy equipment on behalf of Recmaq, the FAC fails to allege the time, place, and

manner of each alleged fraudulent activity, i.e., when Defendants allegedly used the wires, telephone, mail, and/or email to commit the fraud, and the individual role of each Defendant in the alleged fraud. *See Screibner Distrib. Co.*, 806 F.2d at 1401 ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."). Therefore, the Court finds the pleadings do not meet the specificity requirement under Rule 9(b), as the FAC does not specify when the alleged invoices were sent/received, and who, as in which Defendant(s), sent the invoice, email, or telephoned Recmaq.[5] Therefore, the Court finds Recmaq has failed to sufficiently allege the predicate acts of mail fraud and wire fraud as required under Rule 9(b).

### B.    Pattern of Racketeering

A "pattern of racketeering" requires "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity ." 18 U.S.C. § 1961(5). The United States Supreme Court in *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989), defined the term "pattern" as the "showing of a relationship between the predicates" and of "the threat of continuing activity." 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) (citing to Legislative History, S. Rep. No. 91–617 at 158 (1969)). "It is this factor of continuity plus relationship which combines to produce a pattern." *Id.* (citation omitted). As to continuity, a plaintiff . . . must prove continuity of racketeering activity, or its threat." *Id.* at 241. Continuity applies to "a closed period of repeated conduct or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241.

---

[5] Although the FAC states that Recmaq's owner spoke to Ghasemi on the phone "subsequent to the August 2005 meetings," the Court finds this time frame lacks specificity, and nevertheless, the allegations fail to allege the purpose of such call(s), besides the general "to discuss their business relationship" allegation. (FAC ¶ 28.) Thus, because this information can be obtained by Recmaq without discovery, the Court finds such information should have been alleged under Rule 9(b).

12cv0945 AJB (MDD)

A plaintiff may show continuity over a closed period by "proving a series of related predicates extending over a substantial period of time.  Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* at 242.

Ghasemi contends Recmaq has failed to plead a "pattern of racketeering" because the RICO allegations materially lack a defined time frame from which a pattern can be based.  Ghasemi further argues that the allegations in the FAC "boil[] down" to the claim that between December 2009 and December 2010, Sotomayor and Ghasemi engaged in conduct that constitutes a pattern of racketeering.  Thus, Ghasemi essentially argues that the alleged conduct cannot constitute a "pattern of racketeering" because the time period of such conduct was no more than a year in length.

The Court is not inclined to agree.  As stated by the Ninth Circuit in *Allwaste, Inc. v. Hechi*, 65 F.3d 1523, 1528 (9th Cir. 1995), a bright line, one-year rule undermines *H.J. Inc.'s* principle that flexibility rather than rigidity should govern the application of RICO. *See also, Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14, 105 S. Ct. 3275, 3285 n.14, 87 L .Ed. 2d 346 (1985) ( "RICO is to be read broadly.").  Thus, although the FAC alleges that money was not exchanged between the parties until December 31, 2009, the FAC also alleges a relationship and representations made by Defendants as early as 2002.[6]  Therefore, even based on the one-year time frame between December 2009 and

---

[6] The FAC alleges that in or around 2002, Recmaq entered into an oral contract with Defendants, whereby Defendants agreed to locate heavy machinery for sale at auctions and purchase such machinery on behalf of Recmaq.  (FAC ¶ 11.)  Thereafter, in or around August 2005, Recmaq's owner visited both Sotomayor and Ghasemi at an office located in El Cajon, California, wherein Ghasemi showed Recmaq's owner how Ghasemi bid on machinery at auctions on behalf of Recmaq.  (*Id.* at ¶ 27.)   The FAC then alleges that in or around December 31, 2009, Recmaq transferred $338,400.00 to Sotomayor and Ghasemi for the purchase of eight Caterpillar "backhoe loaders."  (*Id.* at ¶ 29.)  However, in March 2010, Sotomayor notified Recmaq that it would be unable to deliver the requested machinery, and informed Recmaq that Defendants would either deliver the machinery or return the funds by the end of June 2010.  (*Id.*)  Based on this reassurance, Recmaq transferred an additional $139,500.00 to Sotomayor and Ghasemi for the future purchase of three Caterpillar "420 E 2008" units.  (*Id.* at ¶ 30.)  To date, Recmaq has not received any machinery or a return of previously delivered funds from Defendants.  Recmaq also alleges Defendants have not returned $240,000.00, which was

December 2010, at this stage in the proceedings, the Court finds Recmaq has adequately

alleged a "pattern of racketeering" as required under § 1962(c).

In sum, even though the Court finds Recmaq has sufficiently pled a "pattern of

racketeering," the Court GRANTS Ghasemi's motion to dismiss the fourth cause of

action alleging violation of RICO and the fifth cause of action alleging RICO conspiracy,

as Recmaq has not pled the predicate acts of mail fraud and wire fraud with the required

specificity under Rule 9(b).  *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir.

2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not

adequately plead a substantive violation of RICO.").  Accordingly, Ghasemi's motion to

dismiss the fourth and fifth causes of action are GRANTED with leave to amend.

Recmaq is granted limited leave to amend the FAC to correct the deficiencies noted

above.

## IV.   Conversion

Recmaq's sixth cause of action alleges conversion.  (FAC ¶¶ 76-83.)  A conversion

occurs where someone wrongfully exercises dominion over the property of another.

*Greka Integrated, Inc. v. Lowry*, 133 Cal. App. 4th 1572, 1581, 35 Cal. Rptr. 3d 684 (Cal.

Ct. App. 2005).  The elements of a conversion are: (1) the plaintiff's ownership or right

to possession of the property at the time of the conversion; (2) the defendant's conversion

by a wrongful act or disposition of property rights; and (3) damages.  *Farmers Ins. Exch.*

*v. Zerin*, 53 Cal. App. 4th 445, 451 (Cal. Ct. App. 1997).  "It is not necessary that there

be a manual taking of the property; it is only necessary to show an assumption of control

or ownership over the property, or that the alleged converter has applied the property to

his own use."  *Oakdale Vill. Gp. v. Fong*, 43 Cal. App. 4th 539, 543–44, 50 Cal. Rptr. 2d

810 (Cal. Ct. App. 1996).  Money can be the subject of an action for conversion if the sum

is specific and identifiable.  *Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014,

held on account with Defendants as earnest money, and Defendants falsely represented
that auctions required a $60,000.00 deposit, when in fact, auctions only require a
$10,000.00 deposit.  (*Id.* at ¶ 31.)

1024 (N.D. Cal. 2008) (citing *Baxter v. King*, 81 Cal. App. 192, 253, 253 P. 172 (Cal. Ct. App. 1927)).

Here, Recmaq's conversion claim is based on allegations that after Recmaq transferred and deposited funds with Defendants, Recmaq had the right to possess either the heavy machinery the funds were intended to purchase, or to recover the funds previously delivered to Defendants. However, because Sotomayor and Ghasemi intentionally and wrongfully retained the funds Recmaq had delivered to Defendants, and Defendants did not deliver the heavy machinery as promised, Recmaq alleges it has been deprived of its right to possess the funds or the machinery. In response, Ghasemi argues that the FAC fails to allege a single instance where money was transferred to him, or wrongfully converted by him, and therefore, this cause of action must be dismissed as to him because Recmaq is once again attempting to summarily impute liability to Ghasemi without any basis.

At this stage in the proceedings, the Court finds Recmaq has adequately pled a cause of action for conversion against Ghasemi. The FAC states that on multiple occasions, including December 31, 2009 and March 3, 2010, Recmaq transferred funds to Sotomayor and Ghasemi for the purchase of heavy equipment, and that neither the equipment nor the funds have been recovered or returned by Recmaq. (FAC ¶¶ 29, 30, 31, 32.) *See Messerall v. Fulwider*, 199 Cal. App. 3d 1324, 1329, 245 Cal. Rptr. 548 (Cal. Ct. App. 1988) ("One who wrongfully withholds personal property from another who is entitled to it under a security agreement may be liable for conversion."). Thus, although Ghasemi argues that the FAC does not adequately allege his involvement in the wrongful withholding of Recmaq's personal property, and further discovery on the issue is needed to support his contentions, the Court finds Recmaq has sufficiently stated a claim for conversion against Ghasemi. *See Textainer Equip. Mgmt. (U.S.) Ltd. v. TRS Inc.*, C 07-01519 WHA, 2007 WL 1795695 (N.D. Cal. June 20, 2007) (finding that the plaintiff stated a claim for breach of contract and conversion because the duty to not

1   misappropriate the containers existed outside the contract); *Robinson Helicopter Co., Inc.*

2   *v. Dana Corp.*, 34 Cal. 4th 979, 993, 22 Cal. Rptr. 3d 352, 102 P.3d 268 (Cal. 2004)

3   (stating that parties to contracts are expected to understand the risks allocated by contract,

4   but are not expected to anticipate fraud or dishonesty).  Accordingly, Ghasemi's motion

5   to dismiss Recmaq's sixth cause of action for conversion is DENIED.

6   **V.     Violation of California's Unfair Competition Law**

7           Recmaq's seventh cause of action alleges violation of the UCL, Cal. Bus. & Prof.

8   Code § 17200, which prohibits unlawful, unfair or fraudulent business acts or practices

9   and unfair, deceptive, untrue, or misleading advertising.  (FAC ¶¶ 84-87.)  "Each prong

10  of [§ 17200] is a separate and distinct theory of liability."  *Birdsong v. Apple, Inc.*, 590

11  F.3d 955, 959 (9th Cir. 2009).  "An act can be alleged to violate any or all of the three

12  prongs of the UCL—unlawful, unfair, or fraudulent."  *Berryman v. Merit Prop. Mgmt.,*

13  *Inc.*, 152 Cal. App. 4th 1544, 1554, 62 Cal. Rptr. 3d 177 (Cal. Ct. App. 2007).

14          In the instant case, it appears Recmaq is alleging that Defendants acts and practices

15  violated all three prongs of the UCL.  Specifically, Recmaq alleges that by misrepresent-

16  ing that auctions required $60,000.00 deposits for heavy machinery, and by misrepresent-

17  ing that Sotomayor and Ghasemi would use Recmaq's funds to purchase the heavy

18  machinery on behalf of Recmaq, Defendants actions constitute "unlawful and unfair

19  business acts" and it "would be fundamentally unfair for Defendants to retain the funds."

20  (FAC ¶¶ 85, 86.)  Ghasemi moves to dismiss the UCL cause of action, arguing that the

21  claims are without merit, and nonetheless, Recmaq has failed to sufficiently allege

22  Ghasemi's role and or participation in any unlawful, unfair, or fraudulent practices.

23  Although the Court finds Recmaq has sufficiently pled Ghasemi's participation in the

24  alleged conduct, the Court finds Recmaq has not adequately pled a violation under the

25  unlawful or fraudulent prongs.

26  ///

27  ///

28

1

### A.    Unlawful Prong

2       A claim based on the unlawful prong incorporates other laws and treats violations

3   of those laws as unlawful business practices independently actionable under state law.

4   *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).  Thus, the

5   operative pleading must allege the way in which the practices violated the "borrowed"

6   law by "stat[ing] with reasonable particularity the facts supporting the statutory elements

7   of the violation."  *Khoury v. Maly's of Cal., Inc*., 14 Cal. App. 4th 612, 618–19, 17 Cal.

8   Rptr. 2d 708 (Cal. Ct. App. 1993).  Here however, aside from stating that Defendants'

9   conduct was "unlawful," Recmaq does not set forth what laws Defendants have allegedly

10   violated.  *See*, *e.g.*, *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection

11   HDTV Television Litig*., 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010) ("Throughout the

12   FACC, Plaintiffs allege that Sony violated several laws, but they do not link those claims

13   to the UCL except by stating that Sony's unlawful and unfair business acts and practices

14   present a continuing threat to plaintiffs.") (internal quotations omitted).  Thus, the Court

15   concludes Recmaq has not sufficiently pled that Ghasemi's acts and practices were

16   unlawful under the UCL.

17

### B.    Fraudulent Prong

18       To state a cause of action under the fraudulent prong of the UCL a plaintiff must

19   show that members of the public are likely to be deceived.  *Schnall v. Hertz Corp*., 78

20   Cal. App. 4th 1144, 1167, 93 Cal. Rptr. 2d 439 (Cal. Ct. App. 2000).  Heightened

21   pleading requirements under Rule 9(b) apply to UCL claims under the fraud prong.

22   *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009).  To satisfy this standard the

23   allegations must be "specific enough to give defendants notice of the particular miscon-

24   duct that is alleged to constitute the fraud charged so that the defendants can defend

25   against the charge and not just deny that they have done anything wrong."  *Semegen v.

26   Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Thus, claims sounding in fraud must allege

27   "an account of the time, place, and specific content of the false representations[,] as well

28

as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

As stated above, with respect to the first and second causes of action, the Court finds Recmaq's fraud allegations are sufficient to state claim under the fraudulent prong. As pertinent to Ghasemi's instant motion, Recmaq identifies the who (Ghasemi), the what (that Ghasemi knew about and ratified Sotomayor's misrepresentations to Recmaq regarding the purpose of the funds Recmaq was providing Defendants), the when (in 2002, August 2005, December 2009, and March 2010), the where (at an office located at 1423 Broadway, El Cajon, California, and over the telephone), and the how (that it was misleading to represent the amount of the deposit required by auctions and that Defendants would purchase equipment for Recmaq with funds provided to Defendants by Recmaq). Thus, it cannot plausibly be said that the allegations in the FAC do not "identif[y] the circumstances constituting fraud so that [the] Defendant[s] can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 540 (9th Cir. 1989); *see also Lima v. Gateway*, 710 F. Supp. 2d 1000, 1006 (C.D. Cal. 2010). Thus, the Court concludes Recmaq has sufficiently pled that Ghasemi's acts and practices were fraudulent under the UCL.

## C.    Unfair Prong

To state a claim under the unfair prong, the Ninth Circuit has explained that California courts must determine whether the practice undermines a legislatively declared policy or threatens competition, or whether the practice has an impact on its alleged victim that outweighs the reasons, justifications, and motives of the alleged wrongdoer. *Lozano v. AT & T Wireless Servs., Inc*., 504 F.3d 718, 736 (9th Cir. 2007); *see also Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186–87, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (Cal. 1999); *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886, 85 Cal. Rptr. 2d 301 (Cal. Ct. App. 1999). Although Recmaq has not identified a "specific constitutional, statutory or regulatory provision"

that has been violated, the Court finds Ghasemi's actions and practices may be consid-
ered unfair if the utility of his conduct is outweighed by the gravity of the harm that
Recmaq allegedly suffered.  *See id.*  Therefore, the Court concludes that Recmaq's
allegations are sufficient to withstand a motion to dismiss because Recmaq has plausibly
alleged that the utility of Ghasemi's practice of failing to disclose the actual deposit
amounts required by auctions, and Ghasemi's failure to actually purchase equipment as
promised, is outweighed by the harm Recmaq has allegedly suffered.  *Linear Tech. Corp.
v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35, 61 Cal. Rptr. 3d 221 (2007)
("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact
which requires consideration and weighing of evidence from both sides and which
usually cannot be made on demurrer."); *see also Williams v. Gerber Prods. Co.*, 552 F.3d
934, 938–39 (9th Cir. 2008).  Thus, the Court concludes Recmaq has sufficiently pled
that Ghasemi's acts and practices were unfair under the UCL.

In sum, after considering Recmaq's allegations and Ghasemi's arguments, the
Court concludes Recmaq has adequately alleged a cause of action under the fraudulent
and unfair prongs, but has failed to adequately allege a cause of action under the unlawful
prong.  Accordingly, the Court GRANTS IN PART AND DENIES IN PART Ghasemi's
motion to dismiss Recmaq's seventh cause of action for violation of the UCL.  Recmaq is
granted limited leave to amend the FAC in order to correct the deficiencies noted above.

## VI.   Intentional Interference with Prospective Economic Advantage

Recmaq's eighth cause of action alleges intentional interference with prospective
economic advantage ("IIEPA").  (FAC ¶¶ 88-93.)  An IIEPA claim consists of six
elements: "(1) an economic relationship between broker and vendor or broker and vendee
containing the probability of future economic benefit to the broker; (2) knowledge by the
defendant of the existence of the relationship; (3) intentional acts on the part of the
defendant designed to disrupt the relationship; (4) actual disruption of the relationship;
(5) damages to the plaintiff proximately caused by the acts of the defendant;" and (6)

"conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 389, 393, 45 Cal. Rptr. 2d 436, 902 P.2d 740 (Cal. 1995); *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 944, 81 Cal. Rptr. 3d 282, 189 P.3d 285 (Cal. 2008) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153–54, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (Cal. 2003)).

Ghasemi moves to dismiss this cause of action on the basis that Recmaq has not sufficiently pled the third and fourth elements.  (Doc. No. 38 at 11-12.)  Specifically, Ghasemi argues that the FAC fails to adequately allege how Ghasemi individually interfered with the alleged relationship, and that Recmaq is attempting to summarily impute liability to Ghasemi.[7]  The Court is not persuaded.  At this stage in the proceedings, the Court finds Recmaq has sufficiently pled the requisite elements to state a cause of action for IIPEA.  The FAC specifically alleges that Ghasemi interfered with Recmaq's relationship with its prospective customers by failing to purchase heavy machinery as requested, and/or by failing to return money delivered to Defendants by Recmaq for the purchase of such equipment.  (FAC ¶¶ 90, 91.)  Thus, although further discovery may prove otherwise, the Court finds Recmaq has adequately stated a claim for relief against Ghasemi.  Accordingly, Ghasemi's motion to dismiss Recmaq's eighth cause of action for IIEPA is DENIED.

## VII.   Breach of the Implied Covenant of Good Faith and Fair Dealing

Recmaq's ninth cause of action alleges breach of the implied covenant of good faith and fair dealing.  (FAC ¶¶ 94-99.)  California law recognizes that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its

---

[7] Ghasemi devoted only two sentences to his argument as to why this cause of action should be dismissed.  Moreover, it was unclear from Ghasemi's motion who the "alleged relationship" he was referring to included.  (Doc. No. 38 at 12:4-4.)  In Recmaq's opposition, Recmaq presumed that this "alleged relationship" was between Recmaq and its prospective customers for heavy machinery.  (Doc. No. 41 at 16:9-12.)  The Court is inclined to agree.

enforcement." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999) (applying California law).  That duty, known as the covenant of good faith and fair dealing, requires "that neither party . . . do anything which will injure the right of the other to receive the benefits of the agreement." *Andrews v. Mobile Aire Estates*, 125 Cal. App. 4th 578, 589, 22 Cal. Rptr. 3d 832 (Cal. Ct. App. 2005).  "The implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094, 8 Cal. Rptr. 3d 233 (Cal. Ct. App. 2004) (quotation omitted); *see also Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032, 14 Cal. Rptr. 2d 335 (Cal. Ct. App. 1992).  Thus, a breach of the implied covenant of good faith and fair dealing requires something more than a breach of the contractual duty itself.  *Careau & Co. v. Security Pacific Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394, 272 Cal. Rptr. 387 (Cal. Ct. App. 1990) (citations omitted).  This "implies unfair dealing rather than mistaken judgment." *Id.*

Ghasemi moves to dismiss this cause of action alleging that the FAC fails to establish a written or oral contract between Plaintiff and Ghasemi.  (Doc. No. 38 at 12.)  Thus, because there is no obligation to deal fairly or in good faith absent an existing contract, it appears Ghasemi is arguing that this cause of action should be dismissed based on the Court's dismissal of the third cause of action for breach of oral contract.  However, as stated above, because the Court finds Recmaq has sufficiently stated a cause of action for breach of oral contract, the Court also finds Ghasemi's arguments for dismissal of the ninth cause of action without merit.[8]  Therefore, because Recmaq has sufficiently pled an oral contract between the parties—at this stage in the proceed-ings—the Court finds Recmaq does not also need to enumerate specific acts by Ghasemi

---

[8] Although Recmaq is correct, in that Ghasemi states that the parties "engaged in a healthy business relationship for eight years," the Court finds this is not an explicit admission of an oral or written contract between the parties.  (Doc. No. 38 at 7:23-25.)

and allege why such acts were unreasonable. *See Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151-52, 271 Cal. Rptr. 246 (Cal. Ct. App. 1990). Accordingly, Ghasemi's motion to dismiss the ninth cause of action for breach of the implied covenant of good faith and fair dealing is DENIED.

## VIII. Breach of Fiduciary Duty

Recmaq's tenth cause of action alleges breach of fiduciary duty. (FAC ¶¶ 100-05.) A claim for breach of fiduciary duty requires a showing that: (1) a relationship giving rise to a fiduciary duty existed; (2) the defendant breached that fiduciary duty; and (3) the plaintiff suffered damages as a result of that breach. *See Apollo Capital Fund LLC v. Roth Capital Partners LLC*, 158 Cal. App. 4th 226, 244, 70 Cal. Rptr. 3d 199 (Cal. Ct. App. 2007); *Tina v. Countrywide Home Loans, Inc*., No. 08cv1233 JM (NLS), 2008 WL 4790906, at *4 (S.D. Cal. Oct. 30, 2008) ("Without a fiduciary relationship, there can be no breach of fiduciary duty."). "A fiduciary relationship is a recognized legal relation-ship such as a guardian and ward, trustee and beneficiary, agent and principal, or attorney and client." *Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 271, 130 Cal. Rptr. 2d 601 (Cal. Ct. App. 2003). "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat. Med. Ctr. v. Genentech, Inc*., 43 Cal. 4th 375, 386, 181 P.3d 142, 150 (2008) (citing *Committee on Children's Television, Inc. v. Gen. Foods Corp*., 35 Cal.3d 197, 221, 197 Cal. Rptr. 783, 673 P.2d 660 (Cal. 1993)).

Ghasemi moves to dismiss this cause of action on the basis that there are insuffi-cient allegations to support the conclusion that Ghasemi, in his individual capacity, held any money in trust for the benefit of Recmaq, or acted in a manner that gave rise to an individual obligation on his part for the benefit of Recmaq. (Doc. No. 38 at 13.) As a result, Ghasemi contends he never owed a fiduciary duty to Recmaq that could have been subsequently breached. In response, and also contained within the body of the FAC,

Recmaq contends that Defendants, through Sotomayor and Ghasemi, served as agents for Recmaq by bidding on and purchasing heavy machinery for Recmaq at auctions and through dealers in the United States.  (FAC ¶ 101.)  Thus, as Recmaq's agents, the FAC alleges that Defendants, through Sotomayor and Ghasemi, had a fiduciary duty to act in Recmaq's best interest, and breached this duty by: (1) failing to deliver eight Caterpillar backhoe loaders and three Caterpillar "420 E 2009" units to Recmaq; (2) failing to bid on and purchase heavy machinery on behalf of Recmaq; and (3) stealing over $1,000,000.00 from Recmaq.  (*Id*. at ¶¶ 102, 103.)

Although the Court is cognizant that an agency relationship creates a fiduciary relationship, *Maganallez v. Hilltop Lending Corp*., 505 F. Supp. 2d 594, 608 (N.D. Cal. 2007), the allegations as currently pled are insufficient to establish such a duty under agency principles.  "California courts define an agent as 'anyone who undertakes to transact some business, or manage some affair, for another, by authority of and on account of the latter, and to render an account of such transactions.' "  *In re Coupon Clearing Serv., Inc*., 113 F.3d 1091, 1099 (9th Cir. 1997) (citing *Violette v. Shoup*, 16 Cal. App. 4th 611, 620, 20 Cal. Rptr. 2d 358 (Cal. Ct. App. 1993)).  When determining whether an agency relationship exists, one of the chief considerations is whether the "agent" has authority to act for and in the place of the "principal" for the "purposes of bringing him or her into legal relations with third parties."  *DSU Aviation, LLC v. PCMT Aviation, LLC*, No.:07-1478 SC, 2007 WL 3456564, at *5 (N.D. Cal. Nov. 14, 2007).  "The other important aspect in determining the existence of an agency relationship is the degree of control exercised by the principal over the activities of the agent."  *Id.*  "If the principal has the right to control the agent's day-to-day operations, then an agency relationship exists.  If, however, the principal has no control over the day-to-day opera-tions and only has [the] right to dictate the end result of the agent's activities, then an 'independent contractor' relationship exists."  *Figi Graphics, Inc. v. Dollar Gen. Corp*.,

1    33 F. Supp. 2d 1263, 1266 (S.D. Cal. 1998) (citing *In re Coupon Clearing Serv.. Inc.*, 113

2    F.3d 1091, 1099-1100 (9th Cir. 1997)).

3         Here, the FAC alleges that in or around 2002, Recmaq, acting through its then

4    manager Anibal Ortiz, and Sotomayor, acting on behalf of Hollywood Auto Mall, entered

5    into an oral contract whereby Sotomayor and his business partner Ghasemi would locate

6    heavy machinery, advise Recmaq of the availability, condition, and specifications of the

7    machinery, and upon instructions by Recmaq, purchase the machinery for the benefit and

8    on behalf of Recmaq.  (FAC ¶ 11.)  Thus, the FAC alleges that Defendants had the

9    "authority" to purchase machinery for the benefit and on behalf of Recmaq, but does not

10   allege whether Recmaq had the authority to dictate and control the day-to-day operations

11   of Defendants, including, by way of example, what auctions and/or dealers Defendants

12   purchased the equipment from.  Moreover, the FAC does not allege facts that tend to

13   show that Ghasemi "knowingly" undertook such fiduciary obligations, exceeding those

14   duties set out in the alleged oral contract between the parties, which would then suggest

15   that Ghasemi intended to subordinate his interests to the interests of Recmaq.[9]  *City of*

16   *Hope Nat'l Med. Cent. v. Genentech, Inc*., 43 Cal. 4th 375,386, 75 Cal. Rptr. 3d 333, 181

17   P.3d 142 (Cal. 2008).

18        Therefore, the Court finds the allegations as currently pled allege nothing more

19   than a contractual, arms-length relationship between the parties, whereby Defendants

20   were instructed to purchase heavy machinery for Recmaq.[10]  *See Oakland Raiders v. Nat'l*

21

---

22   [9] The Court finds Recmaq's conclusory allegations that Ghasemi served as an agent
     for Recmaq, and that Ghasemi was fully aware that he was serving as Recmaq's agent,

23   does not satisfy its pleading obligations.  *See Iqbal*, 556 U.S. at 678 (finding the although
     a complaint need not include "detailed factual allegations," it must offer "more than an

24   unadorned, the defendant-unlawfully-harmed-me accusation").

25   [10] The Court is also cognizant that even in cases where the contract itself does not
     establish a fiduciary relationship, extrinsic factors may "elevate a contractual relationship

26   to a fiduciary one."  *Portney v. CIBA Vision Corp*., No. SAcv07–0854, 2008 WL
     5505517, at *4 (C.D. Cal. July 17, 2008) (citing *City of Hope*, 43 Cal. 4th at 388–89, 75

27   Cal. Rptr. 3d 333, 181 P.3d 142). Relevant extrinsic factors include: (1) the relative
     sophistication and bargaining power of the parties; (2) whether the parties were

28   represented by counsel throughout negotiations; (3) whether one party's reliance on the

1   *Football League*, 131 Cal. App. 4th 621, 633-34, 32 Cal. Rptr. 3d 266 (Cal. Ct. App.

2   2005) (finding that a mere contractual relationship, without more, does not give rise to a

3   fiduciary obligation); *City Solutions, Inc. v. Clear Channel Commc'ns, Inc*., 201 F. Supp.

4   2d 1048, 1050 (N.D. Cal.2002) ("The mere fact that in the course of their business

5   relationships the parties reposed trust and confidence in each other does not impose any

6   corresponding fiduciary duty."); *Margosian v. Margosian*, No. CV F 11–0137, 2011 WL

7   703614, at *11 (E.D. Cal. Feb.18, 2011) (stating that as a general rule, "California courts

8   have not extended the special relationship doctrine to include ordinary commercial

9   contractual relationships") (internal quotations omitted).  Accordingly, Ghasemi's motion

10  to dismiss Recmaq's tenth cause of action for breach of fiduciary duty is GRANTED

11  with leave to amend.  Recmaq is granted limited leave to amend the FAC to comply with

12  the deficiencies noted above.

13  **IX.    Common Counts: Unjust Enrichment, Account Stated, Debt, Money Lent,**

14  **Money Paid**

15          Recmaq's remaining causes of action are common count claims.  (FAC ¶¶ 106-

16  120.)  A common count claim is a claim based on a debt owed by a defendant to a

17  plaintiff, generally for goods or services rendered.  *See* Arthur Linton Corbin, Corbin on

18  Contracts ¶ 20 (1963) (the common counts are statements "that the defendant is indebted

19  to the plaintiff for a variety of commonly occurring reasons, such as money had and

20  received, money lent, work and labor done, and goods sold and delivered. They are

21

22  _____

23  other is "so substantial as to give rise to equitable concerns"; and (4) whether the contract
    requires one party to transfer confidential information to the other.  *See City of Hope*, 43

24  Cal. 4th at 389–91, 75 Cal. Rptr. 3d 333, 181 P.3d 142.  In evaluating these or other
    extrinsic factors, the Court essentially assesses whether one party was so vulnerable that

25  it could not effectively protect itself, and whether the stronger party took advantage of
    that vulnerability.  *See Person v. Smart Inventions, Inc*., 125 Cal. App. 4th 1141, 1161, 23

26  Cal. Rptr. 3d 335 (Cal. Ct. App. 2005) ("[V]ulnerability 'is the necessary predicate of a
    confidential relation,' and 'the law treats [it] as absolutely essential.' ") (quoting *Richelle*

27  *L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 273, 130 Cal. Rptr. 2d 601
    (Cal. Ct. App. 2003)).  Here, however, the FAC does not allege that a fiduciary duty was

28  created because Recmaq was so vulnerable that it could not effectively protect itself.

allegations of indebtedness, and the action may be properly described as indebitatus assumpsit.")

In a conclusory fashion and without citation to case law, Ghasemi contends counts eleven through fifteen should be dismissed because they are merely duplicative of counts one through ten.[11]  Although the Court finds Ghasemi's arguments unsupported, the Court addresses each of Recmaq's remaining claims in turn.

### A.    Unjust Enrichment

In California, unjust enrichment is "not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies.  It is synonymous with restitution." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387, 20 Cal. Rptr. 3d 115 (Cal. Ct. App. 2004) (stating that a claim for restitution/unjust enrichment will lie when one party has accepted and retained a benefit with full appreciation of the facts, under circumstances making it inequitable for him to retain the benefit without payment of its reasonable value); *see also Paracor Finance, Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("Unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the fights of the parties.").  A claim for unjust enrichment requires pleading the "receipt of a benefit and the unjust retention of the benefit at the expense of another." *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881 (Cal. Ct. App. 2000).  "The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1315, 265 Cal. Rptr. 525 (Cal. Ct. App. 1989).  Ordinarily, a plaintiff must show that a benefit was conferred on the defendant through mistake, fraud, coercion, or request. *Nebbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1422, 253 Cal. Rptr. 289 (Cal. Ct. App. 1988).

---

[11] Ghasemi devotes a mere two lines to his argument in favor of dismissal of counts eleven through fifteen.

Contrary to Ghasemi's conclusory contentions, the Court finds Recmaq has properly pled a cause of action for unjust enrichment/restitution.  Recmaq alleges that Defendants, through Sotomayor and Ghasemi, received a total of approximately $1,099,000.00 from Recmaq, and that Sotomayor and Ghasemi have neither returned such funds or provided Recmaq with the equipment such funds were provided for as promised.  (FAC ¶¶ 107-109.)  Therefore, even though Recmaq is alleging the same amount of damages based on breach of an alleged oral contract, the Court finds both claims may proceed.  *See* Fed. R. Civ. P. 8(d)(3) (stating that a "party may state as many separate claims or defenses as it has, regardless of consistency"); *see also Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000) ("The mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery. A theory of unjust enrichment is unavailable only to a plaintiff if that plaintiff has already received the benefit of her contractual bargain.").  Accordingly, the Court finds Recmaq has sufficiently stated a claim for unjust enrichment/restitution in the alternative to its breach of contract claim, and Ghasemi's motion to dismiss the eleventh cause of action is DENIED.

## B.   Account Stated, Debt, Money Lent, and Money Paid

In California, the essential elements for the common counts of account stated, debt, money lent, and money paid are essentially: (1) a statement of indebtedness in a certain sum; (2) consideration (i.e., goods sold); and (3) non-payment.  *See e.g.*, *Truestone, Inc., v. Simi West Indus. Park II*, 163 Cal. App. 3d 715, 209 Cal. Rptr. 757 (Cal. Ct. App. 1984) (applying elements to common count claim for account stated); *See TXU Energy Retail Co. v. Agri–Cel, Inc.*, No. 01–20289, 2006 U.S. Dist. LEXIS 62385, at *17–18, 2006 WL 2385256 (N.D. Cal. Aug. 16, 2006) (stating that an account stated arises where a creditor renders a statement of the account with money owed to the debtor and that debtor failed to object to the statement within a reasonable time); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538 (9th Cir.

1  1988)); *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 460 (Cal. Ct. App. 1997)

2  (applying elements to common count claims for money had and received).  Thus,

3  regardless of which type of common count claim Recmaq seeks to allege, the analysis is

4  the same.

5      As stated above, Recmaq's common count claims for account stated, debt, money

6  lent, and money paid have been sufficiently pled.  Recmaq specifically alleges that: (1)

7  Defendants owed Recmaq $1,099,000.00, (FAC ¶ 111); (2) Sotomayor, on behalf of all

8  Defendants, agreed that Recmaq owed such funds, (*Id*. at  ¶¶ 35, 36); (3) Sotomayor, on

9  behalf of all Defendants, agreed to return such funds or provide the equipment to Recmaq

10 by June 2010, (*Id*. at ¶¶ 35, 36); and (4) Defendants have failed to return the funds or

11 proffer the requested equipment.  *See Levy v. Prinzmetal*, 134 Cal. App. 2d Supp. 919

12 (Cal. Ct. App. 1955) (stating that an account stated need not be submitted by the creditor

13 to the debtor.  A statement expressing the debtor's assent and acknowledging the agreed

14 amount of the debt to the creditor equally establishes an account stated).  Accordingly,

15 Ghasemi's motion to dismiss Recmaq's twelfth through fifteenth causes of action for

16 account stated, debt, money lent, and money paid are DENIED.

## CONCLUSION

18     For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN

19 PART Defendant Ghasemi's motion to dismiss.  (Doc. No. 38.)  Specifically, the Court

20 makes the following findings:

21    1.    DENIES Defendant Ghasemi's motion to dismiss with respect to the First

22          Cause of Action (fraud), Second Cause of Action (conspiracy to commit

23          fraud), Third Cause of Action (breach of oral contract), Sixth Cause of

24          Action (conversion), Seventh Cause of Action (unfair and fraudulent prongs

25          of the UCL); Eighth Cause of Action (intentional interference with prospec-

26          tive economic advantage); Ninth Cause of Action (breach of implied cove-

27          nant of good faith and fair dealing); and Eleventh through Fifteenth Causes

28

1    of Action (unjust enrichment, account stated, debt, money lent, and money
2    paid);
3    2.    GRANTS Defendant Ghasemi's motion to dismiss with respect to the Fourth
4          Cause of Action (RICO), Fifth Cause of Action (RICO Conspiracy); Seventh
5          Cause of Action (unlawful prong of the UCL), and Tenth Cause of Action
6          (breach of fiduciary duty); and
7    3.    Plaintiff Recmaq is granted limited leave to amend the FAC with respect to
8          the Fourth, Fifth, Seventh, and Tenth Causes of Action, in order to cure the
9          deficiencies noted above.  No new parties or claims may be added without
10         leave of Court.

12   IT IS SO ORDERED.

14   DATED:  May 20, 2013

16   Hon. Anthony J. Battaglia
     U.S. District Judge

29