1

2

3

4

5

6

7

8

9 UNITED STATES DISTRICT COURT

10 SOUTHERN DISTRICT OF CALIFORNIA

11

| | | |
|---|---|---|
| COMERCIALIZADORA RECMAQ, | ) | Civil No.12cv0945 AJB (MDD) |
| Plaintiff, | ) | ORDER: |
| v. | ) | |
| | ) | (1) DENYING PLAINTIFF'S MOTION |
| HOLLYWOOD AUTO MALL, LLC, a | ) | FOR PARTIAL SUMMARY |
| California limited liability company | ) | JUDGMENT AGAINST DEFENDANT |
| dba HOLLYWOOD MOTORS, | ) | MOHAMAD REZA GHASEMI, (Doc. |
| MOHAMAD REZA GHASEMI, and | ) | No. 77); |
| JAIME SOTOMAYOR, | ) | |
| | ) | (2) GRANTING IN PART AND |
| Defendants. | ) | DENYING IN PART PLAINTIFF'S |
| | ) | MOTION TO STRIKE DEFENDANT |
| | ) | MOHAMAD REZA GHASEMI'S |
| | ) | AFFIRMATIVE DEFENSES, (Doc. No. |
| | ) | 78); and |
| | ) | |
| | ) | (3) GRANTING PLAINTIFF'S EX |
| | ) | PARTE MOTION TO CONTINUE PRE- |
| | ) | TRIAL CONFERENCE AND |
| | ) | ASSOCIATED DEADLINES, (Doc. No. |
| | ) | 88). |

Presently before the Court are Plaintiff Comercializadora Recmaq Limitada's

("Recmaq") Partial Motion for Summary Judgment, (Doc. No. 77), Motion to Strike

Defendant Mohamad Reza Ghasemi's ("Ghasemi") Affirmative Defenses, (Doc. No. 78),

and ex parte motion to continue the final Pre-trial Conference and associated deadlines,

(Doc. No. 88).[1]  Recmaq also filed a request for judicial notice in conjunction with its partial motion for summary judgment.  (Doc. No. 77-12.)  Ghasemi is not represented by counsel and did not file an opposition to either motion, but did appear at the July 10, 2014 motion hearing to contest both noticed motions.  (Doc. No. 89.)  For the reasons set forth below, the Court DENIES Recmaq's partial motion for summary judgment, GRANTS Recmaq's request for judicial notice,[2] GRANTS IN PART AND DENIES IN PART Recmaq's motion to strike Ghasemi's affirmative defenses, and GRANTS Recmaq's motion to continue the Pre-trial Conference and corresponding deadlines.

## BACKGROUND

### I.     Factual Background

####    A.     Formation of Hollywood Auto Mall, LLC

In August 1998, Ghasemi filed Articles of Organization with the California Secretary of State to form Hollywood Auto Mall, LLC ("Hollywood Motors").[3]  (TAC, Ex. C; Doc. No. 77, Hewitt Decl., Ex. A, Ghasemi Depo. at 84:20-25.)  The Articles of Organization listed Ghasemi as the initial agent for service of process, and indicated that Hollywood Motors would by managed by one manager.  (*Id.*)  The Articles of Organization did not list the names of Hollywood Motors' member(s) and/or manager(s), and the Court is unaware of whether Hollywood Motors had/has an Operating Agreement.  (*Id.*)

---

[1] Recmaq's partial motion for summary only pertains to claims alleged against Ghasemi.  The remaining Defendants have not filed a responsive pleading and Clerk's entry of default has been entered.

[2] Plaintiff requested judicial notice of five documents: (1) Ghasemi's Request for a Civil Harassment Restraining Order against Defendant Jaime Sotomayor, (Doc. No. 77-12, Ex. 1); (2) Ghasemi's First Amended Complaint filed in San Diego Superior Court on January 28, 1999, (Doc. No. 77-12, Ex. 2); (3) California Secretary of State Articles of Incorporation for Car Pro, Inc., (Doc. No. 77-12, Ex. 3); (4) California Secretary of State Articles of Incorporation for Lincoln Capital Corp., (Doc. No. 77-12, Ex. 4); and (5) Statement of Information for Hollywood Auto Mall, LLC, filed on February 18, 2011, (Doc. No. 77-12, Ex. 5).  The Court GRANTS the request because the documents are "not subject to reasonable dispute," and are either matters of public record or court documents.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

[3] Ghasemi's former name was "Cyrus Qasemi."  (TAC, Ex. A.)

2

In early 1999, Jaime Sotomayor ("Sotomayor") approached Ghasemi and informed Ghasemi that he could provide the necessary capital to keep Hollywood Motors operational.[4]  (Ghasemi Depo. at 23:21-24:6.)  At this time, Hollywood Motors had little or no inventory and was about to close.  (*Id.* at 23:21-25.)  Ghasemi knew Sotomayor through Mossy Nissan, where Sotomayor was his supervisor.  (*Id.* at 24:7-8.)  After Sotomayor leased property at 1427 Broadway to be used for the benefit of Hollywood Motors, both Sotomayor and Ghasemi left their employment with Mossy Nissan.  (*Id.* at 24:14-24.)  As reflected on Ghasemi and Sotomayor's 2004 Schedule K-1 Tax Forms, Ghasemi owned 1% of Hollywood Motors and Sotomayor owned 99%.  (Hewitt Decl., Ex. B.)  By 2005, ownership of Hollywood Motors was split evenly between Ghasemi and Sotomayor, each owning a 50% interest.[5]  (*Id.*)

During the course of Ghasemi and Sotomayor's business relationship, Ghasemi was responsible for buying and selling used automobiles for Hollywood Motors and Sotomayor served as the manager.  (Ghasemi Depo. at 24:9-13.)  Ghasemi and Sotomayor agreed that Ghasemi would initially receive $3,000 a month in compensation, but that after the business was "up and running," Ghasemi would receive $5,000 a month, plus a 20% commission.  (*Id.* at 24:25-25:2, 27:20-25.)  It was also understood that when Hollywood Motors was "hurting for money," Ghasemi would be paid "at a later date."  (*Id.* at 58:18-23.)  At one point, Sotomayor owed Ghasemi $20,000 to $30,000 in un-paid compensation.  (*Id.* at 24-25.)

Hollywood Motors maintained bank accounts at Wells Fargo and North Island Credit Union.  (*Id.* at 64:7-12.)  Ghasemi had access to both accounts and signed several checks on behalf of Hollywood Motors.  (*Id.* at 64:19-24, 132:11-146.)  Some of the checks that were signed by Ghasemi on behalf of Hollywood Motors were made out to Ghasemi.  (*Id.* at 128-144.)  Ghasemi also had a Hollywood Motors American Express

---

[4] Although not entirely clear, it appears Sotomayor was not involved with Hollywood Motors before this time, and that a Mr. Asgari was.  (Ghasemi Depo. at 23.)

[5] At oral argument, Ghasemi stated that Sotomayor prepared all tax forms for Hollywood Motors.

1   credit card.  (*Id*. at 103:18-25.)  Ghasemi used this credit card for personal expenses, with

2   Sotomayor's approval, when he did not receive timely compensation.  (*Id*. at 104:1-23.)

### B.   Business Relationship Between Hollywood Motors and Recmaq

4   In or around 2002, Recmaq, acting through its then manager Anibal Ortiz

5   ("Ortiz"), and Sotomayor, acting on behalf of Hollywood Motors, entered into an oral

6   contract.  (*Id*. at 53–55, 57.)  Pursuant to this oral contract, Hollywood Motors would

7   locate heavy machinery for sale through private dealers and at United States auctions, and

8   then advise Recmaq of the availability, condition, and specifications of the identified

9   products.  (*Id*.)  Ghasemi was responsible for locating all heavy machinery requested by

10  Recmaq.  (*Id*. at 52:24-25, 100.)  Once Ghasemi located heavy machinery he thought

11  Recmaq might be interested in purchasing, either he or Sotomayor would contact Recmaq

12  to see if Recmaq wanted to purchase the equipment.  (*Id*. at 54.)  Sometimes, Ghasemi

13  personally emailed Recmaq information about equipment from Sotomayor's email

14  account and/or responded to emails sent by Recmaq to Sotomayor regarding equipment

15  requests.  (Ghasemi Depo. at 52.)  Ghasemi emailed Recmaq from Sotomayor's email

16  account because Sotomayor wasn't "tech savvy."  (*Id*. at 55:18-21.)

17  Some of the auctions Ghasemi bid at on behalf of Recmaq required a deposit

18  before a bid could be placed.  (*Id*. at 177.)  The amount needed for the deposit was

19  different for each auction.  (*Id*.)  Some auctions required a percentage of the purchase

20  price, while others required a flat fee.  (*Id*.)  Ghasemi is not aware of any auction that

21  required a flat $60,000 deposit.  (*Id*.)  Hollywood Motors received a commission for each

22  piece of machinery it sold by marking up each piece of machinery by $3,000.  (*Id*. at

23  151:11-20.)  Ghasemi testified that he generally received 20% of the $3,000 commission

24  paid to Hollywood Motors as an "independent contractor."  (Doc. No. 77-8 at 12.)

25  If Recmaq advised Hollywood Motors that it wanted to purchase equipment that

26  had been located by Ghasemi, Ghasemi would purchase the equipment and Sotomayor

27  would pay all remaining fees and ship the equipment to Recmaq.  (Ghasemi Depo. at

28  57:4-9.)  Hollywood Motors mailed and/or emailed invoices to Recmaq for equipment

that had been purchased by Ghasemi from January 21, 2008 to September 15, 2010. (TAC, Ex. D.)  After receiving an invoice, Recmaq would transfer the appropriate funds via electronic funds transfer to Hollywood Motors' Wells Fargo bank account.  (Doc. No. 77, Hewitt Decl., Ex. F, Costabal Decl. ¶ 5.)  Recmaq wired funds to Hollywood Motors on several occasions from May 9, 2007 to August 27, 2010, to purchase heavy equipment located by Ghasemi.  (*Id*.)  Ghasemi was aware that Recmaq was purchasing the heavy machinery from Hollywood Motors in order to refurbish and resell the equipment to its customers in Chile.  (Ghasemi Depo. at 156:16-20.)

Recmaq purchased several pieces of heavy machinery from Hollywood Motors. (Costabal Decl. ¶¶ 6–10.)  To facilitate these purchases, Recmaq kept a balance of funds on deposit with Hollywood Motors.  (*Id*.)  Defendants periodically prepared balance statements for Recmaq to confirm and validate Recmaq's balance of funds held on deposit by Defendants.  (Costabal Decl. ¶ 3.)  In or about August 2005, Drago Gluscevic ("Gluscevic"), Recmaq's owner, and Ortiz, Recmaq's then manager, visited Defendants in California.  (Ghasemi Depo. at 44:8-21, 51:4-52:5.)  Ghasemi personally met with Gluscevic on three different occasions during this visit: (1) at the office of Hollywood Motors in El Cajon, (*Id*. at 44:8-21); (2) at Sotomayor's house, (*Id*. at 51:4-18); and (3) at Ghasemi's house, (*Id*. at 49:8-18).  During the meeting at Ghasemi's house, Ghasemi showed Gluscevic his work computer to demonstrate how Ghasemi bid at auctions.  (*Id*. at 49:12-18.)

On December 31, 2009, Defendants promised to ship eight Caterpillar "backhoe loaders" to Recmaq for $338,400.  (Costabal Decl. ¶ 6, Ex A, figure 1(a).)  In connection with this purchase, Defendants withdrew $338,400 from the balance of funds Recmaq kept on account with Hollywood Motors.  (*Id*.)  In or around March 2010, Sotomayor advised Recmaq that there was a problem with the sale of the eight Caterpillar "backhoe loaders," and promised to either complete the sale and arrange to have the equipment delivered to Recmaq, or return the funds to Recmaq by June 2010.  (*Id*. at ¶ 7.)  Recmaq

12cv0945 AJB (MDD)

agreed.  Defendants failed to deliver the machinery as promised or return the $338,400.  (*Id.*)

On March 3, 2010, Defendants promised to ship three Caterpillar "420 E 2008" units to Recmaq for $139,500.  (*Id.* at ¶ 8, Exhibit A, figure 2(a).)  In connection with this purchase, Defendants withdrew $139,500 from the balance of funds Recmaq kept on account with Hollywood Motors.  (*Id.* at ¶ 8, Ex. A, figure 2(b).)  To date, Recmaq has not received the three units or a return of the $139,500.  (*Id.* at ¶ 8, Ex. A, figure 2(c).)

On August 21, 2010, Defendants shipped six "New Holland LB75B" heavy machinery units to Recmaq.  (*Id.* at ¶ 10, Ex. A, figure 5.)  Recmaq alleges that in connection with this transaction, Sotomayor promised Recmaq a $2,000 refund for shipping costs that were lower than originally stated because the machinery was shipped out of Houston, Texas rather than Newark, New Jersey.  (*Id.* at ¶ 10, Ex. D.)  To date, Recmaq has not received the $2,000 refund in overstated shipping costs.  (*Id.* at ¶ 10, Ex. F.)  As of about September 21, 2010, Recmaq had a standing account balance on deposit with Defendants in the amount of $619,100.  (*Id.* at ¶ 9, Ex. A, figure 3, Ex. B, figures 4(a)-4(d).)  As of the date of this Order, Hollywood Motors has not returned these funds to Recmaq.  (*Id.* at ¶¶ 9, 11.)

## II.   Procedural History

Recmaq filed the original Complaint against Defendants Ghasemi, Hollywood Motors, and Sotomayor on April 17, 2012.  (Doc. No. 1.)  The Complaint alleged fifteen causes of action: (1) fraud; (2) conspiracy to commit fraud; (3) breach of contract; (4) RICO, 18 U.S.C. § 1962(c); (5) RICO conspiracy, 18 U.S.C. § 1962(d); (6) conversion; (7) unfair business practices under California's Unfair Competition Law ("UCL"); (8) intentional interference with prospective economic advantage; (9) breach of the implied covenant of good faith and fair dealing; (10) breach of fiduciary duty; (11) unjust enrichment; (12) account stated; (13) debt; (14) money lent; and (15) money paid.  (*Id.*)  The Clerk entered default against Hollywood Motors and Sotomayor on July 12, 2012.  (Doc. No. 9.)

On November 13, 2012, the Clerk entered default against Ghasemi. (Doc. No. 18.) On November 14, 2012, Ghasemi filed a motion to dismiss the Complaint, which was rejected by the Court as untimely.  (Doc. No. 19.)  Recmaq filed a motion for default judgment against all Defendants on November 26, 2012.  (Doc. No. 20.)  Recmaq's motion was denied after Ghasemi filed a motion to set aside entry of default on December 14, 2012.  (Doc. No. 23.)  After Recmaq filed the First Amended Complaint ("FAC"), Ghasemi filed a motion to dismiss.  (Doc. No. 38.)

On May 20, 2013, the Court granted in part and denied in part Ghasemi's motion to dismiss the FAC.  (Doc. No. 43.)  The Court dismissed the fourth, fifth, seventh, and tenth causes of action with leave to amend, and denied Ghasemi's motion with respect to the remaining claims.  Recmaq filed the Second Amended Complaint ("SAC") on July 1, 2013, (Doc. No. 45), and Ghasemi filed an answer to the SAC on July 26, 2013, (Doc. No. 46).  On December 6, 2013, Recmaq filed the Third Amended Complaint ("TAC") with Ghasemi's consent.  (Doc. No. 60.)  The only change to the TAC was the addition of Defendant Chris Sotomayor, Defendant Jaime Sotomayor's son.  (Doc. No. 57.)  The parties agreed that Ghasemi would not need to refile his answer and that his answer to the SAC would apply to the TAC.  (*Id.* at 2:1-4.)  Default was entered against Chris Sotomayor on January 24, 2014.  (Doc. No. 65.)

Ghasemi has not noticed or taken any depositions, propounded any document requests, requests for admission, or interrogatories, or issued any third party subpoenas. (Doc. No. 77, Hewitt Decl. ¶ 2.)  Ghasemi has also failed to file a Rule 26(a) disclosure, designate any witnesses or experts, or disclose the existence of any evidence.  The discovery cut-off was March 28, 2014.  (Doc. No. 56.)

## DISCUSSION

### I.    Recmaq's Motion for Partial Summary Judgment

#### A.    Legal Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement

to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A fact is material when, under the governing substantive law, it could affect the outcome

of the case.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Freeman v.*

*Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute is genuine if a reasonable jury

could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing

the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving

party can satisfy this burden in two ways: (1) by presenting evidence that negates an

essential element of the nonmoving party's case; or (2) by demonstrating that the

nonmoving party failed to establish an essential element of the nonmoving party's case

on which the nonmoving party bears the burden of proof at trial.  *Id.* at 322–23.  "Dis-

putes over irrelevant or unnecessary facts will not preclude a grant of summary judg-

ment."  *T.W. Elec. Serv.*, *Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

1987).

Once the moving party establishes the absence of a genuine issue of material fact,

the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of

a disputed fact remains.  *See Celotex*, 477 U.S. at 314.  The nonmoving party cannot

oppose a properly supported summary judgment motion by "rest[ing] on mere allegations

or denials of his pleadings."  *Anderson*, 477 U.S. at 256.  When ruling on a summary

judgment motion, the court must view all inferences drawn from the underlying facts in

the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp*., 475 U.S. 574, 587 (1986).

A trial court may not grant a motion for summary judgment simply because the

nonmoving party does not file opposing material.  *See Heinemann v. Satterberg*, 731 F.3d

914, 917 (9th Cir. 2013) (concluding the district court should consider the motion on the

merits despite the existence of a local rule permitting default summary judgment when

the nonmovant fails to file an opposition).  Under Rule 56(e), "[i]f a party fails to

properly support an assertion of fact or fails to properly address another party's assertion

1  of fact . . . the court may: (1) give an opportunity to properly support or address the fact;

2  (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment

3  if the motion and supporting materials—including the facts considered undis-

4  puted—show that the movant is entitled to it; or (4) issue any other appropriate order."

5  Fed. R. Civ. P. 56(e).

6  **B.    Analysis**

7  Recmaq moves for summary judgment on thirteen of its fifteen causes of action:

8  (1) fraud; (2) breach of contract; (3) RICO; (4) conversion; (5) unfair business practices

9  under the UCL; (6) intentional interference with prospective economic advantage; (7)

10  breach of the implied covenant of good faith and fair dealing; (8) breach of fiduciary

11  duty; (9) unjust enrichment; (10) account stated; (11) debt; (12) money lent; and (13)

12  money paid.[6]  Recmaq contends Ghasemi's liability for each cause of action is based on

13  his joint venture or partnership with Sotomayor.  The Court addresses this basis of

14  liability first, and then addresses whether there is an issue of material fact with regard to

15  the substantive claims in the TAC.

16  **1.    Ghasemi's Liability for Sotomayor's Action**s

17  Recmaq seeks to hold Ghasemi jointly and severally liable for Sotomayor's actions

18  on the basis that Ghasemi and Sotomayor were partners and/or joint venturers.   "A joint

19  venture is 'an undertaking by two or more persons jointly to carry out a single business

20  enterprise for profit.' "  *Weiner v. Fleischman*, 54 Cal. 3d 476, 482 (Cal. 1991) (citing

21  *Nelson v. Abraham*, 29 Cal. 2d 745, 749 (1947) (internal citation omitted)).  The three

22  basic elements of a joint venture are: (1) the members must have joint control over the

23  venture (even though they may delegate it); (2) the members must share the profits of the

24  undertaking; and (3) the members must each have an ownership interest in the enterprise.

25  *See 580 Folsom Associates v. Prometheus Dev. Co.*, 223 Cal. App. 3d 1, 15–16 (Cal. Ct.

26  App. 1990).  Generally, a "joint venture is liable to an injured third party for the torts of a

27

28  _____

[6] Recmaq does not move for summary judgment on the second cause of action alleging conspiracy to commit fraud and the fifth cause of action alleging RICO conspiracy.

1  partner or venturer acting in furtherance of the enterprise." *Orosco v. Sun-Diamond*

2  *Corp.*, 51 Cal. App. 4th 1659, 1670 (Cal. Ct. App. 1997); *see also Myrick v. Mastagni*,

3  185 Cal. App. 4th 1082, 1091 (Cal. Ct. App. 2010) ("One such incident of partnership is

4  that all partners are jointly and severally liable for partnership obligations, irrespective of

5  their individual partnership interests.").

6          Considering the evidence in the light most favorable to Ghasemi, the non-moving

7  party, there are disputed issues of material fact as to whether Ghasemi and Sotomayor

8  were joint venturers. *See Matsushita*, 475 U.S. at 587.  First, the evidence does not prove

9  that Ghasemi and Sotomayor had joint control over Hollywood Motors.  Instead, the

10  evidence presented by Recmaq could support the opposite conclusion, i.e., that

11  Sotomayor had complete control over Hollywood Motors and Ghasemi was a mere

12  employee or independent contractor.  (Doc. No. 77, Hewitt Decl., Ex. E at 12–13.)  Many

13  times throughout Ghasemi's deposition, and in his email to counsel for Recmaq, dated

14  April 4, 2014, Ghasemi stated that he was an "independent contractor," and that his only

15  responsibility was to purchase equipment at the request of Sotomayor.  (*Id.*; Ex. A at

16  57:4-24.)  Accordingly, there are disputed issues of material fact regarding whether

17  Ghasemi had joint control over Hollywood Motors.

18          With respect to the remaining elements—profit sharing and membership interest in

19  the joint venture—Recmaq contends that Ghasemi received a share of the profits

20  (between $3,000 and $5,000 per month, plus 20% of gross profits) and had a 50%

21  membership interest in Hollywood Motors by 2005.  Although correct, and potentially

22  supportive of a joint venture, this evidence raises another concern.  If Ghasemi had a 50%

23  membership interest in Hollywood Auto Mall, LLC, as evidenced on the 2004 and 2005

24  Schedule K-1Tax forms, shouldn't he be considered a member of the limited liability

25  company rather than a joint venturer with Sotomayor?  *See*, *e.g.*, *Earl Fraser Constr., Inc.*

26  *v. Wesco Homes & Dev.*, *Inc.*, No. E055318, 2013 WL 6474440, at *5 (Cal. Ct. App.

27  Dec. 10, 2013) ("The stipulated facts and the joint exhibits establishing the true nature of

28  the relationship between Wesco and Elsinore negates any allegation in the amended

complaint that they were partners or that they were engaged in a joint venture."); *Brown Wood Prods.*, *Inc. v. Interlab Robotics*, *Inc.*, No. H022232, 2002 WL 660452, at *2 (Cal. Ct. App. Apr. 22, 2002) ("Here, there is conflicting evidence as to whether H-Square is a limited liability company, a joint venture, or a fictitious name.");[7] Cal. Corp. Code § 17701.02(r) (stating that only "members" can hold a "membership interest" in a LLC).

A limited liability company is a hybrid business entity formed under the Corporations Code and consisting of at least two members who own membership interests. *See* Cal. Corp. Code, § 17000 *et seq.* Similar to corporations, limited liability companies are recognized as independent legal entities apart from its officers and members, with the power to enter contracts, to buy, own and sell real and personal property, incur debts, and sue or be sued. *See People v. Pacific Landmark*, *LLC*, 129 Cal. App. 4th 1203, 1212 (Cal. Ct. App. 2005); Cal. Corp. Code, § 17003. Like corporate shareholders, members of a limited liability company hold no direct ownership interest in the company's assets. *See* Cal. Corp. Code, § 17300.

Members of an LLC are generally insulated from liability beyond the value of their contributions to the LLC. *See Pac. Landmark*, 129 Cal. App. 4th at 1212. However, the privilege against personal liability is not absolute, and members of a LLC "are subject to liability under the same circumstances and to the same extent as corporate shareholders under common law principles governing alter ego liability." *Id.*; *see also Cal. Corp. Code*, § 17101(b). A member of an LLC can be personally liable based on: (1) the member's own tortious conduct; (2) a member's guarantee or contractual obligation; or (3) under an alter ego theory. *See* Cal. Corp. Code § 1701(c). As confirmed by counsel for Recmaq at oral argument, the only basis to hold Ghasemi liable is based on an alter

---

[7] In *Brown*, although the state appellate court affirmed the trial's court's finding under the "substantial evidence" standard, the court noted the differences between joint ventures and limited liability companies. 2013 WL 6474440, at *1–2. Specifically, the court stated that if the business was an LLC, the LLC could not be charged with the debts of the individual member, whereas if the business was a joint venture, the business could be liable for the debts of the individual business partner. *Id.*

1 ego theory, i.e., liability based on Sotomayor's actions, which can then be imputed to

2 Hollywood Motors.

3       The imposition of alter ego liability on an individual member who does business

4 through a legal entity such as a LLC is an equitable remedy that must be imposed "with

5 caution." *Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal. App. 3d

6 1220, 1249 (Cal. Ct. App. 1991); *see also Dow Jones Co. v. Avenel*, 151 Cal. App. 3d

7 144, 147–48 (Cal. Ct. App. 1984).  For this reason, two overriding predicates are required

8 before a trial court may impose alter ego liability: (1) there must be such a unity of

9 interest and ownership that the separate personalities of the entity and individual no

10 longer exist; and (2) if the acts involved in a plaintiff's case are treated as those of the

11 corporation alone, an inequitable result will follow.  *Id.*  To determine whether there is a

12 unity of interest between the member and the LLC, courts consider many factors.  These

13 include, but are not limited to: commingling of funds and other assets; treatment of

14 corporate asset as their own; holding out as personally liable for the LLC, ownership of

15 all stock, inadequate capitalization, and total absence of corporate assets.  *Id.*  The

16 determination of whether to ignore the corporate veil is a question of fact.  *Id.* at 1248.

17       Drawing all inferences in favor of Ghasemi, a reasonable jury could return a

18 verdict in favor of Ghasemi.  There is no evidence that Ghasemi held himself out as being

19 personally liable for Hollywood Motors, no evidence that Ghasemi owned 100% of

20 Hollywood Motors, and no evidence that Hollywood Motors was inadequately capital-

21 ized or lacked corporate assets.  Although Ghasemi testified that his name was on

22 Hollywood Motors' bank accounts and that he had a Hollywood Motors American

23 Express Credit Card, Ghasemi also stated that he was given the credit card for business

24 expenses (gas, travel, food) and did not have anything to do with the "financial part of

25 Hollywood Motors."  (Ghasemi Depo. at 103:6-11.)  Moreover, Recmaq has not pro-

26 duced any evidence that failing to hold Ghasemi liable for Sotomayor's actions would be

27 inequitable.

28

Accordingly, the Court finds Ghasemi's liability for the substantive allegations in the TAC must be based on either his own conduct, or Sotomayor's conduct made on behalf of Hollywood Motors. To the extent Ghasemi's liability is based on Sotomayor's conduct made on behalf of Hollywood Motors, Ghasemi's liability is limited to his capital contributions to Hollywood Motors, which can only be calculated after a determination of Hollywood Motors' liability.

### 2. Fraud

Recmaq's first cause of action alleges fraud and deceit based on intentional misrepresentations. (TAC ¶¶ 39–51.) Fraud requires a plaintiff to plead and prove: (1) a false representation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damages. *Bank of the W. v. Valley Nat. Bank of Ari.*, 41 F.3d 471, 477 (9th Cir. 1994).

Recmaq asserts that Sotomayor represented to Recmaq that $60,000 was required to qualify as a bidder at auctions for heavy machinery, and that if Hollywood Motors won the bidding process for a piece of machinery, the earnest money Recmaq had on deposit with Hollywood Motors would be subtracted from the total sales price. Recmaq further maintains that Sotomayor represented to Gluscevic that Recmaq needed to send additional funds to Hollywood Motors to pay for heavy machinery, even though Sotomayor never intended on purchasing additional equipment for Recmaq. Recmaq argues that each of these statements were false, that Defendants knew they were false, and that each statement was made to induce Recmaq to send additional funds to Hollywood Motors. Recmaq contends it has lost at least $1,099,000 ($338,400 + $139,500 + $619,100 + $2,000) as a result of its reliance on Sotomayor's misrepresentations.

Recmaq has neither alleged nor provided the Court with any evidence of a misrepresentation made by Ghasemi. This lack of evidence was confirmed by counsel for Recmaq at oral argument, wherein counsel stated that all fraud allegations against Ghasemi were based on his alleged "joint venture" with Sotomayor. Accordingly,

1  because Ghasemi's liability for fraud, if any, must be based on Hollywood Motors'
2  liability for fraud, Recmaq's motion for summary judgment against Ghasemi is DENIED.

3  **3.    Breach of Contract**

4  Recmaq's third cause of action alleges breach of oral contract.  (TAC ¶¶ 58–64.)
5  To assert a breach of contract claim, a plaintiff must put forth evidence of: (1) the
6  existence of a contract; (2) the plaintiff's performance or excuse for nonperformance; (3)
7  the defendant's breach; and (4) damages.  *Abdelhamid v. Fire Ins. Exch.*, 182 Cal. App.
8  4th 990, 999 (Cal. Ct. App. 2010).

9  Recmaq asserts that in 2002, it entered into an oral agreement with Sotomayor, on
10  behalf of Hollywood Motors, to locate heavy machinery through private dealers and at
11  U.S. auctions.  Recmaq further alleged that if it decided it would like to purchase
12  equipment located by Defendants, Ghasemi would purchase the equipment and
13  Sotomayor would arrange for shipment to Recmaq.  Recmaq contends that it has upheld
14  every condition of this oral agreement, but to date, Defendants have not shipped the
15  promised equipment or returned the transferred funds.  Recmaq claims damages in the
16  amount of $1,099.000 ($338,400 + $139,500 + $619,100 + $2,000).

17  Similar to the fraud allegation, Recmaq's breach of contract claim is against
18  Hollywood Motors and/or Sotomayor, both of which are in default.  Therefore, although
19  Ghasemi may potentially be liable for Hollywood Motors' breach of contract up to the
20  amount of his capital contributions, the Court cannot make such a determination on
21  Recmaq's motion for summary judgment against Ghasemi.  Accordingly, to the extent
22  Recmaq seeks to hold Ghasemi personally liable for Hollywood Motors' breach of oral
23  contract based on an alter ego theory, Recmaq's motion is DENIED.

24  **4.    RICO**

25  Recmaq's fourth cause of action alleges a RICO violation under 18 U.S.C. §
26  1962(c) based on the predicate acts of mail and wire fraud.  (TAC ¶¶ 65–75.)  To state a
27  claim under § 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3)
28  through a pattern (4) of racketeering activity."  *Sedima*, *S.P.R.L. v. Imrex Co.*, *Inc.*, 473

U.S. 479, 496 (1985).  Because Recmaq has failed to meet its burden of proof with respect to the fourth element, racketeering activity, the Court will not address the remaining elements.

" 'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as any act 'indict-able' under certain enumerated federal criminal statutes, including 18 U.S.C. § 1341, which makes mail fraud a criminal offense, and 18 U.S.C. § 1343, which makes wire fraud a crime." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, *Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986).  To state a claim for mail or wire fraud, a plaintiff must plead and prove that the defendants: (1) formed a scheme or artifice to defraud; (2) used the United States mails or wires in furtherance of the scheme to defraud; and (3) had the specific intent to deceive or defraud.  *Schreiber*, 806 F.2d at 1399–1400; *United States v. Louderman*, 576 F.2d 1383, 1387–88 & n.3 (9th Cir. 1978), *cert. denied*, 439 U.S. 896 (1978).  To satisfy the specific intent element required for both mail and wire fraud, a plaintiff must put forth evidence of "the existence of a scheme which was 'reasonably calculated to deceive persons of ordinary prudence and comprehension,' " which can be "shown by examining the scheme itself."  *United States v. Green*, 745 F.2d 1205, 1207–08 (9th Cir. 1984) (quoting *United States v. Bohonus*, 628 F.2d 1167, 1171 (9th Cir. 1980), *cert. denied*, 447 U.S. 928 (1980)).

Here, there is no evidence of Defendants' intent to defraud Recmaq, let alone any evidence of Ghasemi's intent to defraud Recmaq.  Neither the email correspondence between Costabal and Sotomayor, nor the invoices that Hollywood Motors mailed to Recmaq between January 8, 2008 through September 15, 2010, nor the wire transfers from Recmaq to Hollywood Motors between January 7, 2008 through August 27, 2010, are direct or circumstantial evidence of Defendants' intent to defraud Recmaq.  (Hewitt Decl., Exs. D, E, G.)  *See Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 406 (9th Cir. 1991) (stating that without any evidence of fraud, even unacceptable conduct is not sufficient to satisfy the intent to deceive element of mail fraud); *Cal. Architectural Bldg. Prods.*, *Inc. v. Franciscan Ceramics*, *Inc.*, 818 F.2d 1466, 1470 (9th

1    Cir. 1987) (denying plaintiff's RICO claim because there was no evidence that the

2    defendant misrepresented his intentions before having to close his business).

3        This lack of evidence was confirmed by counsel for Recmaq at oral argument,

4    wherein counsel stated that summary judgment should be granted because an intent to

5    defraud can be inferred from the evidence.  Although correct, that "an intent to defraud

6    can be inferred from a defendants's statements and conduct," Recmaq has failed to put

7    forth any evidence from which the Court could infer such an intent.  *Elec. Properties E.,*

8    *LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).  The evidence

9    required to infer intent to defraud can be exemplified by the Ninth's Circuit's holding in

10   *Electric Properties East*, *LLC v. Maracus & Millichap Co.*  In *Electric Properties East*,

11   the Ninth Circuit affirmed the district court's dismissal of a RICO claim under Rule

12   12(b)(6), finding allegations that the defendants sold commercial properties for nearly

13   three times the alleged original value and concealed the risky nature of the real estate

14   investments insufficient to state a plausible claim.  751 F.3d at 998–1000.  In doing so,

15   the Ninth Circuit stated that the plaintiff had "plead no facts that would tend to show that

16   this increase was not typical, appropriate, or the product of legitimate market forces," and

17   that defendants' statements regarding the investment were not mere puffery as opposed to

18   " 'deceitful concealment of material facts.' " *Id.* at 1000 (quoting *United States v.*

19   *Bohonus*, 628 F.2d 1167, 1172 (9th Cir.1980)).

20       Similarly, here, Recmaq has presented no facts to support the allegation that

21   Defendants intended to defraud Recmaq by requesting funds for equipment Defendants

22   never intended on purchasing.  To the contrary, the evidence shows that Defendants

23   continued to deliver equipment to Recmaq even after the shipments in question were

24   never delivered to Recmaq.  Therefore, Recmaq has not presented evidence to show "the

25   existence of a scheme which was reasonably calculated to deceive persons of ordinary

26   prudence and comprehension." *United States v. Green*, 745 F.2d 1205, 1207 (9th

27   Cir.1984).  Without such a showing, fraudulent intent cannot be inferred.  *See Celotex*,

28

1   477 U.S. at 323 (stating that the moving party has the initial burden of proof).  Accord-

2   ingly, Recmaq's motion for summary judgment on the RICO claim is DENIED.

3       **5.**  **Conversion**

4      Recmaq's sixth cause of action alleges conversion against all Defendants.  (TAC

5   ¶¶ 82–89.)  "Conversion is the wrongful exercise of dominion over the property of

6   another.  The elements of a conversion are the plaintiff's ownership or right to possession

7   of the property at the time of the conversion; the defendant's conversion by a wrongful

8   act or disposition of property rights; and damages."  *Farmers Ins. Exch. v. Zerin*, 53 Cal.

9   App. 4th 445, 451 (Cal. Ct. App. 1997) (internal citations omitted).  A transfer that is

10   voluntary, i.e., made pursuant to a contract, is not wrongful because a voluntary transfer

11   is consensual.  *See In re Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999) ("[A] mere contrac-

12   tual right of payment, without more, does not entitle the obligee to the immediate

13   possession necessary to establish a cause of action for the tort of conversion."); *In re*

14   *Cruz*, 198 B.R. 330, 333 (S.D. Cal. 1996); *Klett v. Sec. Acceptance Co.*, 38 Cal. 2d 770,

15   789–90 (Cal. 1952) (finding that because the plaintiff consented to the taking of the

16   furniture under the contract, plaintiff did not have a conversion claim based on the

17   defendant's non-payment); *Kassa v. BP W. Coast Producers*, *LLC*, No. C-08-02725

18   RMW, 2008 WL 3494677 (N.D. Cal. Aug. 11, 2008) ("A party that breaches a contract

19   normally does not commit conversion because the contract gives them a right to possess

20   the property at issue."); *but see Chase Inv. Servs. Corp. v. Law Offices of Jon Divens &*

21   *Associates*, *LLC*, 748 F. Supp. 2d 1145, 1179 (C.D. Cal. 2010) *aff'd*, 491 F. App'x 793

22   (9th Cir. 2012) ("A conversion action may lie against a defendant who unjustifiably

23   refuses to return the property on demand, even where the defendant originally obtained

24   possession of the property lawfully."); *Cerra v. Blackstone*, 172 Cal. App. 3d 604, (Cal.

25   Ct. App. 1985) (finding defendant car dealer liable in conversion where dealer lawfully

26   repossessed a vehicle from plaintiff but later refused to allow plaintiff to reinstate the

27   sales contract by paying the past due amount).

28

1    Here, Recmaq asserts that after it transferred funds to Hollywood Motors to bid on

2  and purchase the requested heavy machinery, it had an immediate right to possess the

3  heavy machinery or to recover the transferred funds.  (*Id*. at ¶ 83.)  Recmaq further

4  alleges that with respect to the eight Caterpillar "backhoe loaders," it requested a return

5  of the $338,400 or the equipment as promised, but Defendants failed to comply.[8]  Finally,

6  Recmaq alleges that Defendants intentionally, willfully, and maliciously retained

7  Recmaq's funds and/or the requested machinery, such that Recmaq is entitled to punitive

8  damages.  (*Id*. at ¶ 89.)

9    Similar to the fraud and breach of oral contract claims, Recmaq's conversion claim

10  seeks to recover funds or equipment purchased from Hollywood Motors.  However,

11  Recmaq's summary judgment motion only seeks to adjudicate claims against Ghasemi.

12  Therefore, although Ghasemi may be liable for Hollywood Motors' conversion, to the

13  extent Hollywood Motors is found liable, the Court cannot make such a determination

14  prior to a determination of Hollywood Motors' liability.  Accordingly, Recmaq's motion

15  for summary judgment on the conversion claim is DENIED.

16        **6.    Intentional Interference with Prospective Economic Advantage**

17    Recmaq's eighth cause of action alleges intentional interference with prospective

18  economic advantage ("IIPEA") against all Defendants.  (TAC ¶¶ 95-100.)  To prevail on

19  an IIPEA claim, a plaintiff must plead and prove: "(1) an economic relationship between

20  plaintiff and a third party, with the probability of future economic benefit to the plaintiff;

21  (2) defendant's knowledge of the relationship; (3) an intentional act by the defendant,

22  designed to disrupt the relationship; (4) actual disruption of the relationship; and (5)

23  economic harm to the plaintiff proximately caused by the defendant's wrongful act,

24  including an intentional act by the defendant that is designed to disrupt the relationship

25  between the plaintiff and a third party."  *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th

26  937, 944 (Cal. 2008).

27

28
___
[8] These allegations were made by Counsel for Recmaq at oral argument.  To support these allegations, Recmaq will need to provide evidence of a request for a return of such funds/equipment.

1    Recmaq asserts that it is in the business of refurbishing and reselling heavy

2   machinery to third-parties, and that Ghasemi knew of Recmaq's economic relationship

3   with third-parties, including Recmaq's intention to sell the machinery located and

4   purchased by Defendants to customers in Chile.  (TAC ¶¶ 96-97.)  Recmaq further

5   alleges that beginning in or around December 2009, Sotomayor intentionally stopped

6   delivering equipment to Recmaq, without regard for Recmaq's existing business relation-

7   ships.  (*Id*. at ¶ 98.)  Recmaq seeks lost revenues, lost business opportunities, and

8   litigation costs and fees.  (*Id*. at ¶ 99.)  Recmaq also seeks punitive damages because

9   Defendants' conduct was willful, oppressive, and malicious.  (*Id*.)

10    Recmaq has neither alleged nor provided any proof that Ghasemi committed an

11   intentional act to disrupt Recmaq's business.  Ghasemi's deposition testimony that he was

12   aware of Recmaq's intention to sell the purchased equipment to third-parties in Chile

13   does not suffice.  (Ghasemi Depo. at 156:16-20.)  Moreover, assuming Recmaq had

14   alleged that Ghasemi intended to disrupt Recmaq's business operations by not delivering

15   the requested equipment, Recmaq did not produce any evidence that Ghasmei's failure to

16   deliver the requested materials was nothing more than a run of the mill breach of

17   contract.[9]  *See Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th

18   464, 479 (Cal. Ct. App. 1996) ("[A] contracting party's unjustified failure or refusal to

19   perform is a breach of contract, and cannot be transmuted into tort liability by claiming

20   that the breach detrimentally affected the promisee's business."); *JRS Prods., Inc. v.

21   Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 183 (Cal. Ct. App. 2004) ("As the

22   court concluded in *Arntz*, a breach of contract claim cannot be transmuted into tort

23   liability by claiming that the breach interfered with the promisee's business.").

24    Accordingly, Recmaq's motion for summary judgment with regard to the IIPEA

25   against Ghasemi is DENIED.

26

27    [9] At oral argument, Counsel for Recmaq stated that the independent wrong was
    Ghasemi's failure to deliver the requested equipment.  To the extent Ghasemi had an
28   individual contract with Recmaq, this would be nothing more than a breach of contract
    claim.

### 7.   Breach of Implied Covenant of Good Faith and Fair Dealing

Recmaq's ninth cause of action alleges breach of the implied covenant of good faith and fair dealing.  (TAC ¶¶ 101–106.)  In California, "every contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract[,] such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Storek & Storek*, *Inc. v. Citicorp Real Estate*, *Inc.*, 100 Cal. App. 4th 44, 55 (Cal. Ct. App. 2002); *see also Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 371 (Cal. 1992).  This duty requires contracting parties to exercise discretion given to them under the contract in a way consistent with the parties' expectations at the time of contracting. *Carma*, 2 Cal. at 372–73.  A party breaches this duty when it acts in a way that deprives another contracting party of benefits conferred by the contract.  Breach of the express terms of the contract are not enough to allege a breach of the implied covenant.  *See Careau & Co. v. Sec. Pac. Bus. Credit*, *Inc.*, 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

Recmaq does not allege an independent contract between Recmaq and Ghasemi, and negligence is not enough to impose independent liability on a non-contracting party.[10]  *See Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1166 (9th Cir. 1995) (citing *Nat. Life & Accident Ins. Co. v. Edwards*, 119 Cal. App. 3d 326, 339 (Cal. Ct. App. 1981)) ("[M]ere negligence is not enough to constitute unreasonable behavior for the purpose of establishing a breach of the implied covenant of good faith and fair dealing in an insurance case.").  Therefore, to the extent Recmaq could successfully prove a claim against Hollywood Motors, Ghasemi's liability, if any, would be limited to his capital

---

[10] At oral argument, Counsel for Recmaq stated that this claim was plead in the alternative to the breach of contract claim.

1    contribution in the LLC.  Accordingly, Recmaq's motion for summary judgment against

2    Ghasemi for breach of the implied covenant of good faith and fair dealing is DENIED.

3                    **8.    Breach of Fiduciary Duty**

4         Recmaq's tenth cause of action alleges breach of fiduciary duty.  (TAC ¶¶

5    107–114.)  To assert a breach of fiduciary duty claim, a plaintiff must plead and prove:

6    (1) a relationship giving rise to a fiduciary duty; (2) the defendant's breach; and (3) the

7    plaintiff's damages as a result of the breach.  *See Apollo Capital Fund LLC v. Roth*

8    *Capital Partners LLC*, 158 Cal. App. 4th 226, 244 (Cal. Ct. App. 2007).

9         Recmaq alleges a fiduciary relationship existed between the parties because

10   Defendants acted as Recmaq's agent in bidding on and purchasing heavy machinery

11   through dealers and at U.S. auctions.  (*Id*. at ¶ 108.)  Recmaq alleges that Defendants

12   breached this duty by: (1) failing to deliver the eight Caterpillar "backhoe loaders" as

13   requested; (2) failing to deliver the three Caterpillar "420 E 2008" units as requested; (3)

14   failing to bid on and purchase other heavy machinery; and (4) stealing over one million

15   from Recmaq.  (*Id*. at ¶ 112.)  Recmaq alleges it has sustained damages in the amount of

16   $1,099,000 ($338,400 + $139,500 + $2,000 + $619,100) as a result of Defendants'

17   breach.  (*Id*. at ¶ 114.)

18        Recmaq has failed to prove the existence of a fiduciary relationship between itself

19   and Ghasemi.  "A fiduciary relationship is a recognized legal relationship such as a

20   guardian and ward, trustee and beneficiary, agent and principal, or attorney and client."

21   *Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 271 (Cal. Ct. App.

22   2003).  "[B]efore a person can be charged with a fiduciary obligation, he must either

23   knowingly undertake to act on behalf and for the benefit of another, or must enter into a

24   relationship which imposes that undertaking as a matter of law."  *City of Hope Nat. Med.*

25   *Ctr. v. Genentech*, *Inc.*, 43 Cal. 4th 375, 386 (Cal. 2008) (citing *Comm. on Children's*

26   *Television*, *Inc. v. Gen. Foods Corp*., 35 Cal. 3d 197, 22 (Cal. 1993)).

27        A fiduciary relationship can arise as a matter of law in the following circum-

28   stances: (1) principal and agent, *Smith v. Zak*, 20 Cal. App. 3d 785, 792–93 (Cal. Ct. App.

1  1971) (real estate broker/agent and client); *Black v. Shearson, Hammill & Co.*, 266 Cal.

2  App. 2d 362, 367 (Cal. Ct. App. 1968); (2) attorney and client, *Rader v. Thrasher*, 57

3  Cal. 2d 244, 250 (Cal. 1962); (3) partners, *Koyer v. Willmon*, 150 Cal. 885, 787–88 (Cal.

4  1907); (4) joint venturers, *Sime v. Malouf*, 95 Cal. App. 2d 82, 98 (Cal. Ct. App. 1949);

5  (5) corporate officers and directors, on the one hand, and the corporation and sharehold-

6  ers, on the other hand, *Bancroft–Whitney Co. v. Glen*, 64 Cal. 2d 327, 345 (Cal. 1966);

7  (6) husband and wife, *Vai v. Bank of Am.*, 56 Cal. 2d 329, 337 (Cal. Ct. App. 1961);

8  controlling shareholders and minority shareholders, *Jones v. H.F. Ahmanson & Co.*, 1

9  Cal. 3d 93, 108–12 (Cal. 1969); (8) trustee and trust beneficiary, *Estate of Vocal*, 121

10  Cal. App. 2d 252, 257 (Cal. Ct. App. 1953); (9) guardian and ward, *Estate of Kay*, 30 Cal.

11  2d 215, 226 (Cal. 1947); (10) pension fund trustee and pensioner beneficiary, *Lix v.*

12  *Edwards*, 82 Cal. App. 3d 573, 578 (Cal. Ct. App. 1978); and (11) executor and dece-

13  dent's estate, *Estate of Boggs*, 19 Cal. 2d 324, 333 (Cal. 1942).

14  Here, Recmaq attempts to establish a fiduciary relationship between the parties

15  based on an agency theory.  Recmaq supports these allegations by stating that because

16  Recmaq retained control over Defendants' daily operations, including dictating where

17  Ghasemi could purchase heavy machinery from and from whom, an agency relationship

18  was created.  However, the only evidence in support of Recmaq's contention is Ghasemi's

19  deposition, which itself is not conclusive.

20  Q:      And did you also understand or did you receive instruction at some
21  point, again, either from RecMaq to you directly or through Mr. Sotomayor
    that didn't want you doing any auctions in Florida and no small-time deal-
22  ers?

23  A:      Yeah. It was because of the rust and, you know, condition of the unit.

24  Q:      Okay. So basically stay away from those markets, everything else let
    us know?

25  A:      That is right.

26  Q:      And those were instructions given by RecMaq themselves?

27  A:      Whatever it was was told to me was by Mr. Sotomayor, but I'm sure
    he got it from them.
28  (Ghasemi Depo. at 156:16-157:8.)

1    Moreover, as stated in the Court's May 20, 2013 order granting in part and denying

2    in part Ghasemi's motion to dismiss, a mere contractual relationship between the parties

3    does not automatically create a fiduciary relationship.  *See*, *e.g.*, *Oakland Raiders v. Nat'l*

4    *Football League*, 131 Cal. App. 4th 621, 633–34 (Cal. Ct. App. 2005) (finding that a

5    mere contractual relationship, without more, does not give rise to a fiduciary obligation);

6    *City Solutions*, *Inc. v. Clear Channel Commc'ns*, *Inc*., 201 F. Supp. 2d 1048, 1050 (N.D.

7    Cal. 2002) ("The mere fact that in the course of their business relationships the parties

8    reposed trust and confidence in each other does not impose any corresponding fiduciary

9    duty."); *Margosian v. Margosian*, No. CV F 11–0137 LJO SMS, 2011 WL 703614, at

10   *11 (E.D. Cal. Feb. 18, 2011) ("California courts have not extended the special relation-

11   ship doctrine to include ordinary commercial contractual relationships") (internal

12   quotations omitted); *Tina v. Countrywide Home Loans, Inc*., No. 08cv1233 JM (NLS),

13   2008 WL 4790906, at *4 (S.D. Cal. Oct. 30, 2008) ("Without a fiduciary relationship,

14   there can be no breach of fiduciary duty.").

15   Therefore, because Ghasemi's deposition raises a genuine issue of material fact as

16   to whether Recmaq controlled where Ghasemi could purchase equipment from and from

17   whom, the Court finds Recmaq has not met its burden of proof with regard to establishing

18   a fiduciary relationship between the parties.  *See Recorded Picture Co. v. Nelson Entm't*,

19   *Inc*., 53 Cal. App. 4th 350, 370 (Cal. Ct. App. 1997) ("Under these principles, the typical

20   distribution contract, negotiated at arm's length, does not create a fiduciary relationship

21   between the owner of a product and the distributor.").  Accordingly, Recmaq's motion for

22   summary judgment with regard to the breach of fiduciary duty claim against Ghasemi is

23   DENIED.[11]

24              **9.    Unjust Enrichment**

25   Recmaq's eleventh cause of action alleges unjust enrichment.  (TAC ¶¶ 115–118.)

26   Recmaq alleges that it has transferred a total of $1,099,00 ($338,400 + $139,500 +

27

28
_____

[11] Again, this claim appears to mirror the breach of contract claim.

$2,000 + \$619,100$) to Defendants as payment for heavy machinery, but to date, has not received the requested units.  (*Id*. at ¶ 116.)

In California, unjust enrichment is "not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (Cal. Ct. App. 2004) (stating that a claim for restitution/unjust enrichment will lie when one party has accepted and retained a benefit with full appreciation of the facts, under circumstances making it inequitable for him to retain the benefit without payment of its reasonable value); *see also Paracor Fin.*, *Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("Unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the fights of the parties.").

A claim for unjust enrichment requires pleading the "receipt of a benefit and the unjust retention of the benefit at the expense of another." *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (Cal. Ct. App. 2000).  "The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." *Dinosaur Dev.*, *Inc. v. White*, 216 Cal. App. 3d 1310, 1315 (Cal. Ct. App. 1989). Ordinarily, a plaintiff must show that a benefit was conferred on the defendant through mistake, fraud, coercion, or request. *Nebbi Bros.*, *Inc. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1422 (Cal. Ct. App. 1988).  A plaintiff must establish both that he or she was acting pursuant to either an express or implied request for such services from the defendant and that the services rendered were intended to and did benefit the defendant. *Day v. Alta Bates Med. Ctr*., 98 Cal. App. 4th 243, 248 (Cal. Ct. App. 2002).

Recmaq does not allege that Ghasemi, in his individual capacity, is wrongfully withholding equipment it purchased and/or funds given for the purchase of such equipment.  Instead, Recmaq's allegation is against Hollywood Motors and/or Sotomayor, and Ghasemi's liability is premised solely on an alter ego/joint venturer theory.  Therefore, because Recmaq has failed to submit sufficient evidence of a joint venture between Sotomayor and Ghasemi, and the evidence suggests Ghasemi has/had a membership

24

interest in Hollywood Auto Mall, LLC, Ghasemi's potential liability, if any, can only be assessed after a determination of Hollywood Motors' liability.  Accordingly, Recmaq's motion for summary judgment against Ghasemi with respect to the unjust enrichment claim is DENIED.

### 10. Account Stated, Debt, Money Lent, and Money Paid

Recmaq brings several common count claims.  Common count claims are based on a debt owed by a defendant to a plaintiff for goods or services rendered.  *See* Arthur Linton Corbin, Corbin on Contracts ¶ 20 (1963) (stating that common counts are statements "that the defendant is indebted to the plaintiff for a variety of commonly occurring reasons, such as money had and received, money lent, work and labor done, and goods sold and delivered. They are allegations of indebtedness, and the action may be properly described as indebitatus assumpsit.").  In California, the essential elements of a common count claim are: "(1) the statement of indebtedness in a certain sum, (2) consideration, i.e., goods sold, work done, etc., and (3) non-payment."  *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 459 (Cal. Ct. App. 1997).  Although similar, an account stated claim requires the plaintiff to prove the existence of an entirely new contract under which the parties adjusted their differences and mutually reached an agreement as to the amount due.  *See Gleason v. Klamer*, 103 Cal. App. 3d 782, 786–87 (Cal. Ct. App. 1979).

 Similar to Recmaq's other claims, Recmaq's common count claims allege individual liability against Hollywood Motors and/or Sotomayor, not Ghasemi.  Therefore, the Court must first determine whether Hollywood Motors is liable before assessing Ghasemi's potential liability for these claims.  Accordingly, Recmaq's motion for summary judgment against Ghasemi with respect to the common count claims are DENIED.

### 11. California's Unfair Competition Law

Recmaq's sixth cause of action alleges violation of the UCL.  (TAC ¶¶ 90–94.) Recmaq alleges that Defendants violated the unlawful and unfair prongs by misrepresent-

1  ing that auctions required a deposit in the amount of $60,000 before bidding, (*Id.* at ¶ 91),

2  and violated the fraudulent prong based on intentional misrepresentations, conspiracy to

3  commit fraud, and conversion, (*Id.* at ¶ 94).  Recmaq seeks restitution in the amount of

4  $1,099,000.  (*Id.* at ¶ 94.)

5          As stated above, Recmaq has not presented any evidence that Ghasemi misrepre-

6  sented the amount of earnest money required before bidding at an auction, converted

7  Recmaq's property, or engaged in intentional acts to defraud Recmaq.  Accordingly,

8  Recmaq's motion for summary judgment against Ghasemi with regard to violation of the

9  UCL is DENIED.

10  **II.     Motion to Strike Ghasemi's Affirmative Defenses**

11          **A.      Legal Standard**

12          "The court may strike from a pleading an insufficient defense or any redundant,

13  immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The purposes of a

14  Rule 12(f) motion is to avoid spending time and money litigating spurious issues.  *See*

15  *Fantasy*, *Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*,

16  510 U.S. 517 (1994).  A defense is insufficiently pled if it fails to give the plaintiff fair

17  notice of the nature of the defense.  *See Simmons v. Navajo*, 609 F.3d 1011, 1023 (9th

18  Cir. 2010); *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979).  A matter is

19  immaterial if it has no essential or important relationship to the claim for relief pleaded.

20  *See Fogerty*, 984 F.2d at 1527.  A matter is impertinent if it does not pertain and is not

21  necessary to the issues in question in the case.  *See id.*  Unless it would prejudice the

22  opposing party, courts freely grant leave to amend stricken pleadings.  *Wyshak v. City*

23  *Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979); *see also* Fed. R. Civ. P. 15(a)(2).

24          Motions to strike are generally disfvaored because of the limited importance of

25  pleading in federal practice, and because they are often used as a delay tactic.  *See Lazar*

26  *v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000); *Bureerong v. Uvawas*, 922 F.

27  Supp. 1450, 1478 (C.D. Cal. 1996); *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp.

28  1335, 1339 (N.D. Cal. 1991); *United States v. 729.773 Acres of Land*, *Etc.*, 531 F. Supp.

12cv0945 AJB (MDD)

967, 971 (D. Haw. 1982) ("a motion to strike is a severe measure and it is generally viewed with disfavor").  Given their disfavored status, trial courts often require "a showing of prejudice by the moving party" before granting the requested relief.  *S.E.C. v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995) *aff'd sub nom. S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998).  Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court.  *Fantasy*, 984 F.2d at 1528.

### B.    Analysis

Recmaq moves to strike each of Ghasemi's twenty-four affirmative defenses.  Recmaq moves to strike three of Ghasemi's affirmative defenses on the basis that they are not affirmative defenses, and the remaining twenty-one affirmative defenses on the basis that Ghasemi has not presented any evidence to support such defenses.  Each is addressed in turn.

### 1.    First, Twentieth, and Twenty-Fourth Affirmative Defenses

Recmaq moves to strike Ghasemi's first (failure to state sufficient facts to constitute cause of action), twentieth (no punitive damages), and twenty-fourth (additional defenses) affirmative defenses on the basis that they are not affirmative defenses. "A defense which demonstrates that [the] plaintiff has not met its burden of proof as to an element [the] plaintiff is required to prove is not an affirmative defense." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002); s*ee also G & G Closed Circuit Events*, *LLC v. Nguyen*, No. 10–cv–00168–LHK, at *5 (E.D. Cal. Sept. 23, 2010); *see also Fed. Deposit Ins. Corp. v. Main Hurdman*, 655 F. Supp. 259, 262 (E.D. Cal. 1987) ("Affirmative defenses plead matters extraneous to the plaintiff's prima facie case, which deny plaintiff's right to recover, even if the allegations of the complaint are true.").

Ghasemi's first, twentieth, and twenty-fourth affirmative defenses are not affirmative defenses and will be struck.  Ghasemi's first affirmative defense, "Failure to State Sufficient Facts to Constitute a Cause of Action," is not a valid defense.  Instead, if Ghasemi wished to combat the allegations in the complaint by stating that such allegations were insufficient, he should have filed a motion to dismiss.  *See Helstern v. City of*

*San Diego*, No. 13-CV-0321-LAB RBB, 2014 WL 294496, at *2 (S.D. Cal. Jan. 24, 2014). Ghasemi's twentieth affirmative defense, "No Punitive Damages," is also not a valid defense. A defendant's denial of the plaintiff's right to recover punitive damages is not an affirmative defense; rather, it is an assertion that the plaintiff has not proved a right to recover such damages. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense.").

The same is true with respect to Ghasemi's twentieth-fourth affirmative defense, "Additional Defenses." *E.E.O.C. v. Timeless Invs., Inc*., 734 F. Supp. 2d 1035, 1055 (E.D. Cal. 2010) (internal quotations omitted) ("A reservation of affirmative defenses is not an affirmative defense."); *see also EEOC v. NCL Am., Inc*., 536 F. Supp. 2d 1216, 1226 (D. Haw. 2008) (granting summary judgment on the affirmative defense of "reservation of affirmative defenses" because the defense was vague, not pled in accordance with Rule 8, and sufficient time for discovery had elapsed). Accordingly, Recmaq's motion to strike Ghasemi's first, twentieth, and twenty-fourth affirmative defenses are GRANTED.

### 2.   Remaining Affirmative Defenses

Finally, Recmaq contends Ghasemi's remaining twenty-one affirmative defenses should be struck because Ghasemi has not presented any evidence to support such defenses.[12] Recmaq argues that it will be prejudiced if these affirmative defenses are not struck because it will be forced to litigate the meritless defenses, which may unnecessarily confuse the jury.

Although district courts within the Ninth Circuit are divided as to whether *Iqbal* and *Twombly* apply to affirmative defenses, many courts have found affirmative defenses

---

[12] The remaining twenty-one affirmative defenses include: estoppel, waiver, unclean hands, set off, laches, lack of consideration, failure of consideration, failure to perform conditions, prior material breaches, justification and privileges, statute of limitations, accord, satisfaction and novation, consent, negligence, assumption of the risk, unconscionability, failure to attach necessary and indispensable parties, void contract, prevention, and no breach.

must meet the heightened "plausibility" standard. *See*, *e.g.*, *Barnes & Noble*, *Inc. v. LSI Corp.*, 849 F. Supp. 2d 925 (N.D. Cal. 2012) ("*Twombly's* rationale of giving fair notice to the opposing party would seem to apply as well to affirmative defenses given the purpose of Rule 8(b)'s requirements for defenses"); *Barnes v. AT & T Pension Benefit Plan–Nonbargained Program*, 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010) ("The court can see no reason why the same principles applied to pleading claims [in *Twombly* and *Iqbal*] should not apply to the pleading of affirmative defenses which are also governed by Rule 8."); *Anticancer*, *Inc. v. Xenogen Corp.*, 248 F.R.D. 278, 282 (S.D. Cal. 2007) ("The Court finds that, in this patent infringement action, parties must allege a plausible entitlement to relief in all pleadings, including . . . separate affirmative defenses."); *Dion v. Fulton Friedman & Gullace LLP*, No. 11–2727 SC, 2012 WL 160221, at *2 (N.D. Cal. Jan. 17, 2012) ("Just as a plaintiff's complaint must allege enough supporting facts to nudge a legal claim across the line separating plausibility from mere possibility . . . a defendant's pleading of affirmative defenses must put a plaintiff on notice of the underlying factual bases of the defense."); *Powertech Tech. Inc,. v. Tessera*, *Inc.*, No. C 10–945 CW, 2012 WL 1746848, at *4 (N.D. Cal. May 16, 2012) ("*Twombly* and *Iqbal* changed the legal foundation underlying the Ninth Circuit's *Wyshak* decision, and the reasoning in those decisions also applies in the context of affirmative defenses"); *CTF Dev. Inc. v. Penta Hospitality*, *LLC*, No. C 09–02429 WHA, 2009 WL 3517617, at *8 (N.D. Cal. Oct. 26, 2009) ("Under the *Iqbal* standard, the burden is on the defendant to proffer sufficient facts and law to support an affirmative defense"). The Court finds these cases persuasive, and therefore applies *Iqbal* and *Twombly* to Ghasemi's affirmative defenses.

None of Ghasemi's remaining twenty-one affirmative defenses are adequately plead. *See* Fed. R. Civ. Pro. 12(f); *see Sands*, 902 F. Supp. at 1165. For example, the second affirmative defense (estoppel) states that "each and every allegation contained therein are barred, in whole or in part, by the equitable doctrine of estoppel." (Answer at 13:1-4.) The remaining defenses are similarly deficient. The waiver defense does not indicate what facts Recmaq was appraised of and/or how it failed to perform as promised;

1  the unclean hands defense does not state how Recmaq acted in a deceitful manner; the

2  lack of consideration and failure of consideration defenses do not indicate the inaccurate

3  or untruthful terms of the agreements; the failure to perform and prior material breaches

4  defenses do not indicate what conditions Recmaq failed to perform or how it materially

5  breached the contract; the justification and privileges defense does not state what

6  Ghasemi's conduct was justified; the assumption fo the risk affirmative defense does not

7  state how Recmaq assumed any risk; and the void contract defense does not explain

8  why/how the contract was void.[13]

9      Accordingly, Recmaq's motion to strike Ghasemi's second (estoppel), third

10 (waiver), fourth (failure to mitigate), fifth (unclean hands), sixth (set off), seventh

11 (laches), eighth (lack of consideration), ninth (failure of consideration), tenth (failure to

12 perform conditions), eleventh (prior material breaches), twelfth (justification and

13 privileges), thirteenth (statute of limitations), fourteenth (accord, satisfaction, and

14 novation), fifteenth (consent), sixteenth (negligence), seventeenth (assumption of risk),

15 eighteenth (unconscionability), nineteenth (failure to attach necessary and indispensable

16 parties), twentieth (void contract), twenty-second (prevention), and twenty-third (no

17 breach) affirmative defenses is GRANTED.  Ghasemi must file an amended answer,

18 providing details to support each affirmative defense, no later than **August 18, 2014.**  The

19 amended answer need not attach evidence to support each affirmative defense, but must

20 provide facts to support each defense.

21 **III.    Motion to Continue Pretrial Conference and Corresponding Deadlines**

22     On July 9, 2014, Recmaq filed an ex parte motion to continue the final Pre-trial

23 Conference and all associated deadlines.  (Doc. No. 88.)  The pretrial conference was

24 originally calendared for August 8, 2014, with pre-trial disclosures due on July 11, 2014,

25 objections to the pre-trial disclosures due on August 1, 2014, and the proposed pre-trial

26 order due on August 1, 2014.  (Doc. No. 56.)  The Court GRANTED the ex parte request

27 at the motion hearing on July 10, 2014.  (Doc. No. 89.)

28

[13] This list is exemplary rather than exhaustive.

12cv0945 AJB (MDD)

In light of the findings set forth above, specifically the Court's ruling that there are disputed issues of material fact with regard to Ghasemi's individual liability or liability based on his membership interest in Hollywood Motors, the Court finds Hollywood Motors' liability must be assessed before any further determination regarding Ghasemi's liability.  Accordingly, Recmaq must file a motion for default judgment against the defaulted Defendants (Hollywood Motors, Sotomayor, and Chris Sotomayor) no later than **August 18, 2014.**  Once the motion for default judgment is filed, the Court will set a date for opposition briefs and a date for oral argument on the matter.  After a resolution of the defaulted Defendants' liability, the Court will set a date and time for the final pre-trial conference regarding Recmaq's claims against Ghasemi.

IT IS SO ORDERED.

DATED:  July 21, 2014

Hon. Anthony J. Battaglia
U.S. District Judge

12cv0945 AJB (MDD)